Argued and submitted September 26, 2008, reversed February 17, 2010

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

THOMAS EVERETT KURTZ,
*Defendant-Appellant.*

Jefferson County Circuit Court
05FE0031; A132184

228 P3d 583

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Legal Services Division, Office of Public Defense Services.

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Sercombe, Presiding Judge, and Brewer, Chief Judge, and Carson, Senior Judge.*

SERCOMBE, P. J.

---

* Brewer, C. J., *vice* Edmonds, P. J.

**SERCOMBE, P. J.**

█      Defendant was driving a vehicle that was stopped by an Indian tribal police officer outside the boundaries of an Indian reservation, following a pursuit from within the reservation. He was charged with and convicted of the crimes of attempting to elude a "police officer" with a vehicle, ORS 811.540, and resisting arrest by a "peace officer," ORS 162.315. On appeal, defendant assigns error to the trial court's denial of his motion for judgment of acquittal, arguing that the tribal officer involved in the underlying traffic stop was not a "police officer" or "peace officer" as defined by the applicable statutes. We review, as a question of law, the denial of a motion for judgment of acquittal when the facts are not in dispute. *State v. Nollen*, 196 Or App 141, 144, 100 P3d 788 (2004). We conclude that the tribal police officer was not a "police officer" for purposes of ORS 811.540 or a "peace officer" under ORS 162.315 and, accordingly, reverse.

The issues presented are questions of law and the facts are not in dispute. The case was tried to the court, and the court made the following factual findings:

"Joseph Davino is a full time commissioned officer working for the Confederated Tribes of Warm Springs. Officer Davino was hired by Warm Springs on October 25, 2004.

"[Defendant] is a non-Indian who lives on the Warm Springs Indian Reservation.

"* * * * *

"During Officer Davino's shift on January 19, 2005, he observed a vehicle driven by [defendant] on Highway 26. The two were traveling in opposite directions and Officer Davino thought [defendant] was appearing to hide from him as they passed.

"Officer Davino turned his vehicle around and followed the car driven by [defendant]. Officer Davino testified that he followed the vehicle for approximately one mile and the driver and passenger appeared nervous.

"At a point very close to the reservation boundary [defendant] turned around to look at Officer Davino. When [defendant] turned around, his vehicle went across the center line and into the oncoming traffic lane of travel.

"Officer Davino activated his overhead lights to stop the vehicle driven by [defendant] for a traffic offense committed in the officer's presence.

"The vehicle didn't respond to the overhead lights and proceeded to go over the bridge across the Deschutes River that is the boundary of the Reservation.

"Officer Davino activated his siren near the boat entrance to the Deschutes River which is located off the Reservation and at this point believed that he had probable cause to stop the vehicle for the crime of Attempt to Elude Police with a Vehicle.

"The driver of the vehicle eventually pulled over. The passenger in the vehicle fled by foot. The driver of the vehicle, [defendant], was detained at gun point and placed under arrest."

Defendant subsequently resisted arrest and was subdued with the assistance of additional tribal police officers and pepper spray. Davino was driving a marked Warm Springs patrol car and wearing his Warm Springs Police uniform at the time of the traffic stop. Davino was not deputized by the Jefferson County Sheriff nor had he attended the Oregon Police Academy at that time.

At the conclusion of the state's case, defendant moved for judgment of acquittal on both counts. In that motion, defendant argued that "in terms of Count 1, Attempt to Elude a Police Officer, ORS 811.540, that * * * a Warm Springs Tribal Police Officer is not a police officer under the definition provided by ORS 801.395." Defendant went on to argue that "in terms of Count 2, the Resisting Arrest count, [ORS 162.315], * * * the state must establish that the Warm Springs Tribal Police officer [is a peace] officer as described in [ORS 133.055]." The court denied defendant's motion and issued a judgment of conviction on both counts. Defendant renews those same contentions on appeal.

ORS 811.540 defines the crime of fleeing or attempting to elude a police officer. That statute provides, in part:

"(1)   A person commits the crime of fleeing or attempting to elude a police officer if:

"(a)   The person is operating a motor vehicle; and

"(b)   A police officer who is in uniform and prominently displaying the police officer's badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle gives a visual or audible signal to bring the vehicle to a stop, including any signal by hand, voice, emergency light or siren, and either:

"(A)   The person, while still in the vehicle, knowingly flees or attempts to elude a pursuing police officer; or

"(B)   The person gets out of the vehicle and knowingly flees or attempts to elude the police officer."

Defendant does not dispute that the facts establish a violation of ORS 811.540, so long as Davino was a "police officer" as that term is used in the statute.

ORS 801.395, which defines "police officer" for purposes of ORS 811.540, provides:

" 'Police officer' includes a member of the Oregon State Police, a sheriff, a deputy sheriff, a city police officer or a law enforcement officer employed by a service district established under ORS 451.410 to 451.610 for the purpose of law enforcement services."

■      We construe a statutory term to discern legislative intent as to its meaning by first examining the text, context, and any relevant legislative history of the provision. *State v. Gaines,* 346 Or 160, 172, 206 P3d 1042 (2009). A tribal police officer is not specifically listed in ORS 801.395 as being included within the scope of the term "police officer." However, the use of "includes" in the text of the definition of "police officer" indicates that the legislature intended the list to be nonexclusive. *See, e.g., State v. Courtier,* 166 Or App 514, 517, 997 P2d 894 (2000) (ordinance defining "dangerous or deadly weapon" by use of term "includes" was not limited to the list of particularly described and identified weapons); *State v. Haynes,* 149 Or App 73, 76, 942 P2d 295 (1997), *rev den,* 328 Or 275 (1999) ("It bears emphasis that stating what a term *means* is not the same as stating what it *includes.* The former describes generally what a term is intended to express or signify. The latter describes in particular those things that are contained in or embraced by the term." (Emphasis added.)). Given that "police officer" is an open-ended term in ORS 801.395, we determine the meaning of "police officer" by

identifying the shared characteristics of the law enforcement officers that are listed in the statutory definition.

■    It is no simple task to identify the core characteristics of the listed examples of "police officer[s]" so as to discern the fundamental meaning of that term. At one level of generality, all of the included types of "police officer[s]" are persons who work for a governmental entity and are charged with the enforcement of laws and the maintenance of public order. That meaning of "police officer" is consistent with the common understanding of "police officer" as "an officer in a police force." *Webster's Third New Int'l Dictionary* 1754 (unabridged ed 2002). The relevant definition of "police" is: "**4 b :** the department of government having as its principal function the prevention, detection, and prosecution of public nuisances and crimes." *Id.* at 1753. That general meaning of "police officer" encompasses members of virtually every public law enforcement organization, including the Warm Springs Tribal Police. The trial court apparently gave that broad meaning to the term "police officer."

The listed types of "police officer[s]" in ORS 801.395, however, share more than a common job function to enforce criminal laws. Each type of "police officer" is employed by a governmental entity of the State of Oregon—by the state, a county, a city, or a law enforcement service district. If *that* characteristic is the defining feature of "police officer"—that a "police officer" is a person employed by an Oregon governmental entity—then defendant did not attempt to elude a "police officer" under ORS 811.540. The Warm Springs Tribe is not a governmental entity of the State of Oregon. Instead, it is a "self-governing sovereign political community[ ]." *United States v. Wheeler*, 453 US 313, 322-23, 98 S Ct 1079, 55 L Ed 2d 303 (1978).

■    As between the more general and the specific meanings of "police officer" suggested by the listed types of law enforcement officers in ORS 801.395, the statutory context of the term—how it is used in the Oregon Vehicle Code—suggests the more narrow meaning.[1] Within the Oregon Vehicle

---

[1] The "context" of a statute, for the purposes of our statutory construction analysis, includes other statutes *in pari materia,* that is, other statutes on the same general subject. As the Supreme Court explained in *Springfield Utility Board*

Code, the term "police officer" is used in three primary ways: (1) to define offenses that involve some interaction with a police officer;[2] (2) to specify law enforcement authority with respect to traffic and motor vehicle laws;[3] and (3) to perform duties in connection with implied consent laws.[4] The statutes in the Oregon Vehicle Code that specify the law enforcement authority of a "police officer" extend that authority only to officers of Oregon governmental entities. Thus, it is likely that the overall meaning of "police officer" in the Oregon Vehicle Code is a law enforcement officer of an Oregon governmental entity.

ORS 810.410(1) sets out the core authority of a "police officer" with respect to the enforcement of traffic crimes and violations. That statute provides context in determining the general meaning of "police officer" as defined by ORS 801.395. ORS 810.410(1) provides:

> "A police officer may arrest or issue a citation to a person for a traffic crime at any place within or outside the jurisdictional authority of the *governmental unit* by which the police officer is authorized to act *as provided by ORS 133.235 and 133.310.*"

(Emphasis added.)

ORS 810.410(1) contains two indications that a "police officer" is a person acting on behalf of an Oregon governmental entity. First, the authority of a police officer is

---

*v. Emerald PUD*, 339 Or 631, 644, 125 P3d 740 (2005), "the relevant context for determining whether a [public utility district] is 'municipality' under ORS 756.010(4) is the statutory framework for state regulation of utilities set out in ORS chapters 756, 757, and 758." Similarly, the relevant context for determining the meaning of "police officer" defined by ORS 801.395 is the Oregon Vehicle Code.

[2] *See, e.g.*, ORS 307.090 (giving false information to a police officer); ORS 811.535 (failing to obey a police officer); ORS 811.545 (fleeing or attempting to elude a police officer).

[3] *See, e.g.*, ORS 810.410 (arrest and citation authority); ORS 810.420 (use of speed measuring device by a police officer); ORS 810.425 (issuance of parking citation by a police officer); ORS 810.430 and ORS 811.570(3) (police officer authority to move illegally parked motor vehicles); ORS 810.450 (police officer authority to stop, measure, and weigh motor vehicles); ORS 810.480 (inspection of motor vehicle dealer records by a police officer).

[4] ORS 813.100 (implied consent to breath test by a police officer); ORS 813.110 (issuance of temporary license by a police officer); ORS 813.131 (implied consent to urine test by a police officer); ORS 813.135 (field sobriety tests by a police officer); ORS 813.140 (chemical test of blood by a police officer).

linked to a "governmental unit." Although the term "governmental unit" is not defined, its technical meaning in other contexts is a governmental entity organized under the laws of the State of Oregon. *See, e.g.*, ORS 30.360(4) (defining "governmental unit" for purposes of statutes regulating actions by or against governmental units as "the State of Oregon or any county, incorporated city, school district or other public corporation of like character in this state"); ORS 87.603 (defining "governmental unit" as used in ambulance lien statutes as "the state, any county, city or other municipal corporation or any department, board or other agency of any of them"); ORS 442.015(14) ("governmental unit" as used in health planning statutes as "the state, or any county, municipality or other political subdivision, or any related department, division, board or other agency").

Second, ORS 810.410(1) describes the authority of a "police officer" to be "as provided by ORS 133.235 and 133.310." ORS 133.235 sets out the circumstances under which an officer may arrest a person; ORS 133.310 similarly describes the authority of an officer to arrest a person without a warrant. The types of officers covered by those statutes are

> "a member of the Oregon State Police or a sheriff, constable, marshal, municipal police officer, investigator of a district attorney's office if the investigator is or has been certified as a peace officer in this or any other state, or an investigator of the Criminal Justice Division of the Department of Justice of the State of Oregon."

ORS 133.005(3). Those identified law enforcement officers are police officers of Oregon governmental entities. ORS 810.410(1), then, equates the authority of a "police officer" to be coincident with that of officers pursuant to ORS 133.235 and ORS 133.310—that is, officers of Oregon governmental entities.

■ The Oregon Vehicle Code, then, describes the enforcement authority of a "police officer" by referring to the "authority of the governmental unit by which the police officer is authorized to act." That reference is likely to mean an Oregon governmental unit. The code also references the arrest authority of such an officer to be a law enforcement

officer of the State of Oregon or its municipalities and political subdivisions. Given that statutory framework for the authority of a "police officer," we conclude that the intended meaning of "police officer" as defined by ORS 801.395 is a law enforcement officer of an Oregon governmental unit.[5]

Indeed, we reached that conclusion in *dictum* in *State v. Pamperien*, 156 Or App 153, 967 P2d 503 (1998). In that case, we considered the scope of a tribal police officer's authority to stop a nontribal member on the reservation for a traffic infraction under the stop authority given to a "police officer" by ORS 810.410.[6] We concluded that "[t]he authority of tribal police officers to stop drivers for speeding within the borders of the reservation does not derive from ORS 810.410. Rather, it derives from the tribe's inherent power as sovereign to maintain public order on the reservation." *Pamperien*, 156 Or App at 156. A concurrence to the majority opinion would have found that a tribal police officer was a "police officer" under ORS 801.395 and was therefore authorized to stop drivers under ORS 810.410. The majority disagreed:

> "If * * * tribal officers are 'police officers' under ORS 801.395, then *all* of ORS 810.410 applies to tribal officers. Such a ruling would have implications far beyond the narrow facts of this case. For example, ORS 810.410(1) allows a police officer to 'arrest or issue a citation to a person for a traffic crime at any place within *or outside the jurisdictional authority of the governmental authority by which the police officer is authorized to act * * *.*' (Emphasis added.) In other words, if the concurrence is correct in its reading of the statutes at issue here, then ORS 810.410 grants tribal officers the right to arrest nonmembers of the tribe off the reservation for violations of state law. While we know of no federal case law forbidding such a result, it clearly would represent a grant of authority to tribal officers far in excess of anything mandated by tribal sovereignty."

156 Or App at 157 n 3 (omissions and emphasis in original).

---

[5] We need not and do not decide if *all* Oregon law enforcement officials are "police officer[s]" as that term is defined under ORS 801.395. It is sufficient to conclude that one limiting characteristic of a "police officer" under ORS 801.395 is that the person carries out law enforcement duties for an Oregon governmental entity. Other limiting characteristics may narrow further the scope of the term.

[6] At that time, ORS 801.395 provided that "police officer" "includes a member of the Oregon State Police, a sheriff, a deputy sheriff or a city police officer."

In sum, the term "police officer" is defined by ORS 801.395 by reference to law enforcement officials of the State of Oregon and governmental entities organized under state law. The context of the use of the term "police officer" in the Oregon Vehicle Code confirms that a limiting characteristic of a "police officer" as defined by ORS 801.395 is that the officer be an agent of an Oregon governmental entity. Because we conclude that Davino was not an agent of an Oregon governmental entity and, therefore, was not a "police officer" within the meaning of the statute, defendant did not violate ORS 811.540 in seeking to elude a "police officer," and the trial court erred in not granting his motion for judgment of acquittal on the fleeing and eluding charge.

Defendant's motion for judgment of acquittal on the resisting arrest charge under ORS 162.315 requires the construction of different statutory text. ORS 162.315 provides, in part:

"(1)   A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest.

"(2)   As used in this section:

"(a)   'Arrest' has the meaning given that term in ORS 133.005 and includes, but is not limited to, the booking process.

"(b)   'Parole and probation officer' has the meaning given that term in ORS 181.610.

"* * * * *

"(3)   It is no defense to a prosecution under this section that the peace officer or parole and probation officer lacked legal authority to make the arrest or book the person, provided the officer was acting under color of official authority."

ORS 161.015(4) provides the relevant definition of "peace officer":

" 'Peace officer' means a sheriff, constable, marshal, municipal police officer, member of the Oregon State Police, investigator of the Criminal Justice Division of the

Department of Justice or investigator of a district attorney's office and such other persons as may be designated by law."

Thus, pursuant to the statutory definition, "peace officer" is defined to mean any one of a list of law enforcement officials, together with "such other persons as may be designated by law." An Indian tribal officer is not one of the law enforcement officials listed in ORS 161.015(4); the issue becomes whether an Indian tribal officer is within the category of "such other persons as may be designated by law."

Our construction of the meaning of "such other persons as may be designated by law" is assisted by the rule of *ejusdem generis*. In *Bellikka v. Green,* 306 Or 630, 636, 762 P2d 997 (1988), the court described that rule: "[W]hen the legislature chooses to state both a general standard and a list of specifics, the specifics do more than place their particular subjects beyond the dispute; they also refer the scope of the general standard to matters of the same kind, often phrased in Latin as '*ejusdem generis*.' " *See also Schmidt v. Mt. Angel Abbey,* 347 Or 389, 402, 223 P3d 399 (2009) ("When * * * the legislature uses a general term in a statute and also provides specific examples, those specific examples provide useful context for interpreting the general term."); *Vannatta v. Keisling,* 324 Or 514, 533, 931 P2d 770 (1997); *State v. Gallegos,* 217 Or App 248, 255, 174 P3d 1086 (2007), *rev den,* 344 Or 670 (2008) (under *ejusdem generis,* a list of specifics gives "further definition" to the scope of a more general standard that follows).

All of the listed law enforcement officers in ORS 161.015(4) are agents of Oregon governmental entities whose authority is "designated by [Oregon] law."[7] Applying the rule of *ejusdem generis,* "such other persons as may be designated by law" under ORS 161.015(4) are peace officers of the same type as the listed persons—persons whose law enforcement

---

[7] *See* ORS 51.440 (appointment of "constable for any justice of the peace"); ORS 180.350 (authority of investigator employed by the Attorney General); ORS 181.030 (powers and duties of state police officers); ORS 206.010 (general duties of sheriff); ORS 221.919 (powers and duties of "marshal" as chief of police for city incorporated under general statutes).

functions are designated by Oregon law as opposed to some other authority.

Moreover, that construction of ORS 161.015(4) is consistent with its legislative history. The provision was part of the 1971 Oregon Criminal Code. The definition of "peace officer" was discussed by the Senate Committee on Criminal Law and Procedure at a February 26, 1971, hearing on the criminal law revision. As originally drafted, the "peace officer" definition included only the listed law enforcement officials. Senator Anthony Yturri suggested amending the bill by adding "and other such persons as may be designated by law." Senator Yturri said that "and such other persons as may by statute or the governor be designated as peace officers * * * the legislature still has the power in its wisdom, if it sees from time to time that certain types of individuals should have the powers of a peace officer under certain circumstances." Tape Recording, Senate Committee on Criminal Law and Procedure, SB 40, Feb 26, 1971, Tape 5, Side 2 (Statement of Sen Anthony Yturri).

■ That legislative history suggests that the legislature contemplated that either the legislature itself or the governor would grant peace officer power to additional persons. Examples mentioned in the committee hearings included campus police, liquor control personnel, and Department of Agriculture personnel. Thus, the only mentioned examples of potential "peace officers" are, like the officers already enumerated in the statute, granted police authority by the State of Oregon, its agencies or municipalities. It is unlikely that the legislature contemplated that the law of another jurisdiction could designate a peace officer for the purposes of ORS 161.015(4). We conclude that a "peace officer" under ORS 161.015(4) is a law enforcement official who is "designated by [Oregon] law." Any designation of Davino under tribal law is insufficient to qualify him as a "peace officer" under ORS 161.015(4).

■ The question then becomes whether Oregon law does, in fact, designate Indian tribal police officers as peace officers. The ordinary meaning of "designate" in this context is:

> "3 : to name esp. to a post or function "4 a : to decide upon : **NOMINATE, DELEGATE, APPOINT**; *esp.* : to assign

officially by executive or military authority ‹the operating agency last *designated* by the president› ‹the tanks had been *designated* to exploit a breakthrough of the enemy's defenses—R. D. Gardner› **b :** to induct in a rank or position ‹the supreme council is *designated* as the highest organ of state power› ‹the duke had been *designated* as king of a puppet state› **c :** to choose and set apart (as by public will or in the process of government administration) ‹a successful *designating* petition places the name of the candidate on the primary ballot—*Book of Civic Definitions*› ‹control dams *designated* for construction› ‹finally Queen Victoria was asked to *designate* a site—B. K. Sandwell› * * *."

*Webster's* at 612. Thus, a "peace officer" is "designated by law" when the law enforcement status or functions of that person or the position are specified by law.

No Oregon statute supplies that official status or delegates that law enforcement function to tribal police officers. The statutes relating to police officer training and certification include Indian tribal officers as persons subject to training and certification. Under ORS 181.640, the Board of Public Safety Standards and Training and the Department of Public Safety Standards and Training are authorized to provide training for "public safety personnel," to establish procedures by which "law enforcement units" can determine whether "public safety personnel meet minimum standards or have minimum training," and to "certify * * * public safety personnel * * * as being qualified under the rules established by the board." ORS 181.640(1)(b) - (d). ORS 181.610(16) defines "public safety personnel" to include "police officers," and ORS 181.610(14) defines "police officers" to include various employees of a "law enforcement unit" including an "Indian reservation."

But a training certificate is not a designation of official status or a delegation of authority as a "peace officer." By analogy, a student of law may obtain a diploma from a law school, but that person is not "designated" as a lawyer until accredited by the exercise of judicial authority. A police cadet may obtain training, but is not "designated by law" until official status or authority is conferred by operation of law. The training and certification statutes for police officers do not

"designate by law" the official status or authority of Indian tribal police officers.[8]

Therefore, although tribal officers share many characteristics with Oregon police, sheriffs, and other law enforcement personnel, the Warm Springs Tribal Police Officers are not "designated" by Oregon law as peace officers. Accordingly, Davino was not a "peace officer" for the purposes of the resisting arrest statute, ORS 162.315, and the trial court erred in denying defendant's motion for judgment of acquittal on that count.

Reversed.

---

[8] Similarly, ORS 236.360 requires "just cause" and procedural protections in the discipline of a "police officer," defined by ORS 236.350(3) to include

"an officer or member of a law enforcement unit who is employed full time as a peace officer commissioned by a city, port, school district, mass transit district, county, Indian reservation * * * and who is responsible for enforcing the criminal laws of this state or laws or ordinances relating to airport security."

ORS 236.360 does not designate police officers; it operates to provide protections to persons who are already police officers.