Argued and submitted November 9, 2010, decision of Court of Appeals reversed; judgment of circuit court affirmed March 25, 2011

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## THOMAS EVERETT KURTZ,
*Respondent on Review.*

(CC 05FE0031; CA A132184; SC S058346)

249 P3d 1271

Janet A. Klapstein, Assistant Attorney General, Salem, argued the cause for petitioner on review. With her on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Marc D. Brown, Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for respondent on review. With him on the brief was Peter Gartlan, Chief Defender.

Before De Muniz, Chief Justice, and Durham, Balmer, Kistler, Walters, and Linder, Justices.**

DE MUNIZ, C. J.

---

** Gillette, J., retired December 31, 2010, and did not participate in the decision of this case. Landau, J., did not participate in the consideration or decision of this case.

**DE MUNIZ, C. J.**

Warm Springs Tribal Police Officer Davino observed defendant commit a traffic violation on the Warm Springs Indian Reservation and signaled defendant to stop his vehicle. Defendant did not stop his vehicle until after he had crossed the reservation boundary into Jefferson County. During the traffic stop, an altercation occurred between Davino and defendant. As a result, defendant was charged in Jefferson County Circuit Court with fleeing or attempting to elude a police officer, ORS 811.540, and resisting arrest by a peace officer, ORS 162.315. At trial, defendant moved for a judgment of acquittal on both charges, arguing that Davino was neither a "police officer" for purposes of ORS 811.540 nor a "peace officer" for purposes of ORS 162.315.[1] The trial court denied defendant's motion and found defendant guilty on both charges.

Defendant appealed, and the Court of Appeals reversed defendant's convictions, concluding that, because Davino was a tribal police officer and not a police officer employed by an Oregon governmental unit, Davino was neither a "police officer" nor a "peace officer" for purposes of the fleeing or attempting to elude a police officer statute and the resisting arrest statute. *State v. Kurtz*, 233 Or App 573, 228 P3d 583 (2010). This court allowed the state's petition for review to consider whether the legislature intended to include tribal police as "police officers" and "peace officers" within the relevant statutes. As we will explain, we conclude that, for purposes of the crimes of fleeing or attempting to elude a police officer and resisting arrest, the legislature intended the statutory terms "police officer" and "peace officer" to include tribal police officers such as Davino. We therefore reverse the Court of Appeals decision and affirm the trial court's judgment.

We take the facts from the record and the Court of Appeals opinion:

"The case was tried to the court, and the court made the following factual findings:

---

[1] The relevant statutes are set out in full later in the opinion.

" 'Joseph Davino is a full time commissioned officer working for the Confederated Tribes of Warm Springs. Officer Davino was hired by Warm Springs on October 25, 2004.

" '[Defendant] is a non-Indian who lives on the Warm Springs Indian Reservation.

" '* * * * *

" 'During Officer Davino's shift on January 19, 2005, he observed a vehicle driven by [defendant] on Highway 26. The two were traveling in opposite directions and Officer Davino thought [that defendant] was appearing to hide from him as they passed.

" 'Officer Davino turned his vehicle around and followed the car driven by [defendant]. Officer Davino testified that he followed the vehicle for approximately one mile and the driver and passenger appeared nervous.

" 'At a point very close to the reservation boundary [defendant] turned around to look at Officer Davino. When [defendant] turned around, his vehicle went across the center line and into the oncoming traffic lane of travel.

" 'Officer Davino activated his overhead lights to stop the vehicle driven by [defendant] for a traffic offense committed in the officer's presence.

" 'The vehicle didn't respond to the overhead lights and proceeded to go over the bridge across the Deschutes River that is the boundary of the Reservation.

" 'Officer Davino activated his siren near the boat entrance to the Deschutes River which is located off the Reservation and at this point believed that he had probable cause to stop the vehicle for the crime of Attempt to Elude Police with a Vehicle.

" 'The driver of the vehicle eventually pulled over. The passenger in the vehicle fled by foot. The driver of the vehicle [defendant] was detained at gun point and placed under arrest.'

"Defendant subsequently resisted arrest and was subdued with the assistance of additional tribal police officers and pepper spray. Davino was driving a marked Warm Springs patrol car and wearing his Warm Springs Police uniform at

the time of the traffic stop. Davino was not deputized by the Jefferson County Sheriff nor had he attended the Oregon Police Academy at that time."

*Kurtz*, 233 Or App at 575-76 (quoting the trial court's findings of fact; brackets in original).

On appeal, the Court of Appeals separately analyzed the statutes describing "police officer" and "peace officer" to determine whether the legislature intended to include tribal police within those statutory terms. The Court of Appeals first considered whether Davino was a "police officer" under ORS 801.395.[2] In doing so, the Court of Appeals—identifying a common characteristic shared by the officers listed in the statute—concluded that tribal police fell within the dictionary definition of "police officer" and shared many of same functions as the listed officers, *i.e.*, enforcing laws, maintaining order, and working for a governmental entity responsible for those functions. However, that court concluded that the term "police officer," as used in ORS 801.395, was limited to officers employed by a governmental entity of the State of Oregon, or a county or city within the state. The Court of Appeals reasoned that, because Davino was employed by the Confederated Tribes of Warm Springs, a separate sovereign, Davino was not a police officer within the meaning of ORS 801.395, and therefore defendant had not attempted to elude a "police officer" in violation ORS 811.540. *Id.* at 582.

The Court of Appeals turned next to the definition of "peace officer," set out in ORS 161.015(4), observing that the types of law enforcement officers identified in that statute also shared a common limiting characteristic—they were all agents of an Oregon governmental entity whose authority was designated by Oregon law. Viewed in that light, the Court of Appeals reasoned that the concluding phrase in ORS 161.015(4)—"and such other persons as may be designated by law"—was meant to include only those officers designated

---

[2] Throughout its opinion, the Court of Appeals used the current version of ORS 801.395. At the time of defendant's crimes, however, a slightly different version of the statute was in place. Because the differences between the two versions do not affect the disposition of this case, this opinion will, for the reader's convenience, also use the most recent version of ORS 801.395.

as "peace officers" by state law. The Court of Appeals held that, because no Oregon statute designated tribal police as "peace officers," Davino was not a "peace officer" within the meaning of ORS 161.015(4) and, therefore, defendant had not resisted arrest by a peace officer in violation of ORS 162.315. *Id.* at 584. As noted, we allowed the state's petition for review to determine whether the legislature intended to include tribal police as "police officers" and "peace officers" in the pertinent statutes.

On review, the state argues that, in restricting both statutory terms to "agent[s] of an Oregon governmental entity," the Court of Appeals erroneously ignored the most common characteristic of all the types of law enforcement officers listed in ORS 801.395 and ORS 161.015(4)—all are law enforcement officers whose central duties are to enforce state and local laws. For his part, defendant reiterates that Davino was not a "police officer" or a "peace officer" because "tribal police" are not (1) expressly listed under the pertinent statutes, (2) employed by an Oregon governmental entity, or (3) deputized or commissioned by an Oregon law enforcement agency. To resolve the parties competing arguments, we turn first to the relevant statutes.

The crime of fleeing or attempting to elude a police officer is part of the Oregon Vehicle Code and is set out in ORS 811.540. That statute provides, in part:

"(1)   A person commits the crime of fleeing or attempting to elude a police officer if:

"(a)   The person is operating a motor vehicle; and

"(b)   A police officer who is in uniform and prominently displaying the police officer's badge of office or operating a vehicle appropriately marked showing it to be an official police vehicle gives a visual or audible signal to bring the vehicle to a stop, including any signal by hand, voice, emergency light or siren, and either:

"(A)   The person, while still in the vehicle, knowingly flees or attempts to elude a pursuing police officer[.]"

For purposes of ORS 811.540, the term "police officer" is defined in ORS 801.395, which provides:

" 'Police officer' *includes* a member of the Oregon State Police, a sheriff, a deputy sheriff, or a city police officer, a Port of Portland peace officer or a law enforcement officer employed by a service district established under ORS 451.410 to 451.610 for the purpose of law enforcement services."

(Emphasis added.)

The crime of resisting arrest is part of the Oregon Criminal Code and is set out in ORS 162.315, which provides, in part:

"(1)   A person commits the crime of resisting arrest if the person intentionally resists a person known by the person to be a peace officer or parole and probation officer in making an arrest.

"* * * * *

"(3)   It is no defense to a prosecution under this section that the peace officer or parole and probation officer lacked legal authority to make the arrest or book the person, provided the officer was acting under color of official authority."

For purposes of that statute, the term "peace officer" is defined in ORS 161.015(4), which provides:

" 'Peace officer' means a sheriff, constable, marshal, municipal police officer, member of the Oregon State Police, investigator of the Criminal Justice Division of the Department of Justice or investigator of a district attorney's office *and such other persons as may be designated by law.*"[3]

(Emphasis added.)

We observe, as did the Court of Appeals, that a tribal police officer is not explicitly listed in either statute as a "police officer" or a "peace officer." The question, then, is whether the legislature nevertheless intended to include a

_____

[3] Unlike ORS 801.395, which uses the verb "includes" to identify some, but not all of the persons who are "police officer[s]," ORS 161.015(4) uses the verb "means" to define the term "peace officer" as being one of the kinds of officials listed. Defendant argues that using the verb "means" generally signals an intent to make the statutory list exhaustive. That may be true in some contexts. However, that is not the case here, because the legislature included the phrase "and such other persons as may be designated by law," which signals an intent to make the list nonexhaustive.

tribal police officer within the meaning of those statutes.[4] To discern the legislature's intent, we consider the statutory text, context, and any relevant legislative history. *State v. Gaines*, 346 Or 160, 172, 206 P3d 1042 (2009).

The legislature in ORS 801.395 has provided a list of examples of law enforcement personnel who are included within the scope of the categorical term "police officer." The term "includes" in that statute indicates that the phrase "police officer" can embrace persons beyond those that the statute expressly lists. To determine the intended scope of the categorical term "police officer," we first must consider the functions that a "police officer" carries out. That inquiry leads us to the ordinary meaning of "police officer." *See State v. Briney*, 345 Or 505, 511, 200 P3d 550 (2008) (words of common usage are given their plain and ordinary meaning).

The dictionary definition for "police officer" is "a member of a police force." *Webster's Third New Int'l Dictionary* 1754 (unabridged ed 2002). "Police force," in turn, is defined as "a professional body of trained officers * * * entrusted by government with the maintenance of public peace and order, the enforcement of laws, and the prevention and detection of crime." *Id.* "Peace officer" is similarly defined as "a civil officer (as a sheriff, constable, policeman) whose duty is to preserve the public peace." *Id.* at 1660.

Those definitions encompass tribal police officers. The Warm Springs tribal police are part of an extensive tribal law enforcement department that includes a 60-member police force, a correctional division, a fish and game division, and a detectives division. Tribal police are charged with maintaining public peace and order on the Warm Springs reservation by enforcing local tribal law, federal law, and Oregon laws.[5] Warm Springs tribal police receive the same

---

[4] We note that the officers listed in ORS 161.015(4) are either the same, or of the same character, as the officers listed in ORS 801.395. Both lists, for example, include sheriffs, members of the Oregon State Police, and city or municipal police officers.

[5] Tribal courts have criminal jurisdiction over all offenses committed by Indians in each tribe's respective Indian country lands. 25 USC § 1301(2). Tribal courts, however, do not have criminal jurisdiction over non-Indians who commit crimes in Indian country. *Oliphant v. Suquamish Indian Tribe*, 435 US 191, 212, 98 S Ct 1011, 55 L Ed 2d 209 (1978). Instead, the federal government has jurisdiction

training as other Oregon police officers—when hired, they must complete a nine-month program that includes attending the Oregon Department of Public Safety Standards and Training Academy and receiving field training. At the end of that program, tribal police officers are certified by the Oregon Department of Public Safety Standards and Training.

Despite those characteristics—shared with the officers listed in the pertinent statutes—the Court of Appeals concluded that tribal police officers were not included within the statutory term "police officer" for purposes of the Oregon Vehicle Code because:

> "the term 'police officer' is defined by ORS 801.395 by reference to law enforcement officials of the State of Oregon and governmental entities organized under state law. The context of the use of the term 'police officer' as defined by ORS 801.395 is that the officer be an agent of an Oregon governmental entity. Because we conclude that Davino was not an agent of an Oregon governmental entity and, therefore, was not a 'police officer' within the meaning of the statute, defendant did not violate ORS 811.540 in seeking to elude a 'police officer,' and the trial court erred in not granting his motion for judgment of acquittal on the fleeing and eluding charge."

*Kurtz*, 233 Or App at 582. Similarly, the Court of Appeals concluded that Davino was not a "peace officer" for purposes of the resisting arrest statute because:

> "a 'peace officer' under ORS 161.015(4) is a law enforcement official who is 'designated by [Oregon] law.' Any designation of Davino under tribal law is insufficient to qualify him as a 'peace officer' under ORS 161.015(4)."

*Id*. at 584 (brackets in original). For the reasons that follow, we disagree with the Court of Appeals.[6]

---

over Indian country criminal offenses committed by non-Indians *against Indians* pursuant to 18 USC § 1152, and the Assimilative Crimes Act, 18 USC § 13. Those statutes incorporate criminal offenses set forth under state law. Each state has exclusive jurisdiction over criminal offenses occurring within Indian country that are committed by non-Indians against non-Indians. *Solem v. Bartlett*, 465 US 463, 465 n 2, 104 S Ct 1161, 79 L Ed 2d 443 (1984).

[6] Unlike the Court of Appeals, which separately analyzed the terms "police officer" and "peace officer," as we will explain, determining the legislature's intended meaning of "police officer" also determines the legislature's intended meaning of "peace officer."

As we have noted, ORS 801.395 provides a nonexclusive list of examples of persons who are "police officers," but the statute does not expressly define the functions that a police officer fulfills. The plain meaning of "police officer" indicates that a police officer is a member of a professional body of trained officers entrusted by government with law enforcement and other related functions. In construing the term "police officer," we must take care not to narrow the scope of the term that the legislature has used and thereby distort the legislative intent. Nothing in the ordinary meaning of the term "police officer" indicates that the legislature meant to exclude a Warm Springs tribal police officer from the scope of the statutory term "police officer."

We turn next to the interpretive influence of the nonexclusive list of examples of a "police officer" set out in ORS 801.395. This court has developed certain principles that pertain to the interpretation of statutory text that consists of a general term accompanied by examples of the general term. One such principle, *ejusdem generis*, serves to confine the interpretation of the general term according to one or more common characteristics of the listed examples.

For example, in *Bellika v. Green*, 306 Or 630, 762 P2d 997 (1988), a statute required landlords to maintain a rented dwelling unit "in a habitable condition." The statute went on to define several specific conditions that would make a dwelling unit uninhabitable, including one that required the "grounds" of a dwelling unit to be kept "free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin * * *." *Id.* at 634 (quoting ORS 91.770(1)(f)). The plaintiff claimed that she was injured when she stepped into a partially concealed hole in the yard of a rented dwelling. She asserted that the landlord had violated the general statutory requirement that the property be maintained in a "habitable condition" even though the concealed hole on the grounds did not amount to the sort of problem (*i.e.*, accumulated garbage) that the statute specifically addressed. This court rejected that claim, reasoning that the legislature's specification of examples of an uninhabitable dwelling unit meant that "other shortcomings of residential premises must pose danger to health or safety of the same kind and as serious as

those which the specific requirements of [the statutory subsections] are meant to prevent." *Id.* at 636.

*Bellika* illustrates one way in which the legislature can confine the scope of a general term (there, "uninhabitable") by defining the specific conditions that render a dwelling unit "uninhabitable." Other cases demonstrate how the same principle applies in other contexts. *See Lewis v. CIGNA Ins. Co.*, 339 Or 342, 351, 121 P3d 1128 (2005) (in applying statutory criterion, "personal and telephonic interviews and other formal or informal information gathering techniques," the categorical phrase, "other * * * information gathering techniques" did not include an independent medical examination under principle of *ejusdem generis*); *Vannatta v. Keisling*, 324 Or 514, 533, 931 P2d 770 (1997) (in applying law prohibiting "all undue influence [in elections], from power, bribery, tumult, and other improper conduct[,]" the general phrase "other improper conduct" referred only to improper conduct of the same kind as that listed in the specific examples).

The legislature, however, can alter the calculus by signaling that it does not intend to confine the scope of a general term in a statute according to the characteristics of listed examples. Typically, statutory terms such as "including" and "including but not limited to," when they precede a list of statutory examples, convey an intent that an accompanying list of examples be read in a nonexclusive sense. In that context, we continue to "give interpretive weight to all the words that the legislature used," including both the general term and any specific examples. *Schmidt v. Mt. Angel Abbey*, 347 Or 389, 404, 223 P3d 399 (2009). As *Schmidt* goes on to explain,

"That does not mean, of course, that the specific examples constitute the universe of items to which the general term refers; rather, it means only that our interpretation of the general term includes consideration of those specific examples."

*Id.* (footnote omitted). Applying those principles to a statute defining "sexual exploitation," *Schmidt* stated:

"The legislature provided that 'sexual exploitation' includes, *but is not limited to*, the conduct enumerated in

the statute. As a result, we cannot interpret the term as encompassing *only* the conduct in the listed examples."

*Id.* at 405 (emphasis in original).

We return to ORS 801.395. That statute, as noted, lists several examples of law enforcement officers, but does not refer expressly to their official functions except by their title, *e.g.*, "a sheriff, a deputy sheriff, or a city police officer * * *." The statute's examples refer expressly to the specific employer of two categories of police officers, *i.e.*, "a Port of Portland peace officer" and "a law enforcement officer employed by a service district established under ORS 451.410 to 451.610 for the purpose of law enforcement purposes." The statute refers in general terms to the employer of two categories of police officers, *i.e.*, a member of the Oregon State Police and a "city" police officer. The statute does not mention the employer of two categories of police officer, *i.e.*, a sheriff and a deputy sheriff.

When examining the characteristics of a list of examples, for purposes of statutory interpretation, "the court seeks to find if it can, a *common* characteristic among the listed examples." *Id.* (emphasis in original). The legislature's composition of the listed examples in ORS 801.395 indicates that it relied more heavily on the categorical term "police officer," not the listed examples, to convey the definition and functions embraced by that term. Moreover, the legislature's varying or nonexistent references to the entity that might employ a police officer also suggest that the legislature accorded greater significance to the law enforcement functions embraced by the plain meaning of "police officer" rather than on a police officer's employment relationship with a particular unit of state or local government. Consequently, we have difficulty concluding that employment by an entity created by Oregon law is a common characteristic that the examples in ORS 801.395 impose on every "police officer." As *Schmidt* indicated, we cannot interpret "police officer" as encompassing *only* employees of state or local governments. *Id.* Rather, "police officer," according to its ordinary meaning, embraces a professional law enforcement officer entrusted by government with the maintenance of public peace and order,

the enforcement of laws, and the prevention and detection of crime. That meaning includes a Warm Springs tribal police officer.

Two statutes, in particular, demonstrate the correctness of our conclusion. ORS 181.610(14), the statute defining "police officer" for purposes of police training and certification, includes tribal police within that definition and authorizes tribal police officers to attend the Oregon Department of Public Safety Standards and Training Academy and to be trained and certified as public safety officers. ORS 181.610(14) provides, in part:

> " 'Police officer' means an officer, member or employee of a law enforcement unit who is employed full-time as a *peace officer* commissioned by a city, port, school district, mass transit district, county, county service district authorized to provide law enforcement services under ORS 451.010, *Indian reservation*, the Criminal Justice Division of the Department of Justice, the Oregon State Lottery Commission or the Governor or who is a member of the Department of State Police and *who is responsible for enforcing the criminal laws of this state* or laws or ordinances relating to airport security or is an investigator of a district attorney's office if the investigator is or has been certified as a peace officer in this or any other state."

(Emphasis added.)

ORS 236.350(3)(a) also includes tribal police within the definition of "Public Safety Officer" for purposes of disciplinary actions involving public safety officers.[7] That statute provides:

---

[7] ORS 236.360 provides, in part:

"(1) Employers of public safety officers shall adopt written procedures to implement the provisions of ORS 236.350 to 236.370.

"(2) Except as provided in subsection (3) of this section, the following safeguards apply when a public safety officer is under investigation concerning a matter that the officer reasonably believes may lead to economic sanctions or dismissal from employment and is subject to an interview by the officer's employer:

"* * * * *

"(4) Disciplinary action may not be taken against a public safety officer without just cause."

" 'Public safety officer' means:

"(a) A member of a law enforcement unit who is employed full-time as a *peace officer* commissioned by a city, port, school district, mass transit district, county, *Indian reservation,* the Criminal Justice division of the Department of Justice, the Oregon State Lottery Commission or the Governor and *who is responsible for enforcing the criminal laws of this state* or laws or ordinances relating to airport security."

(Emphasis added.)

Nevertheless, defendant asserts that, if tribal police are included within the definition of "police officer" and "peace officer," for purposes of this case, the effect will be to also include police of any federally recognized tribe in the nation, law enforcement officers from other states and police officers from other nations. We disagree that our decision in this case has the far reaching effects defendant describes.

Tribes are limited sovereigns for whom the laws of the state in which they are located generally apply, unless those laws are preempted by federal law or somehow infringe on the right of reservation Indians to make their own laws and be governed by them.[8] Although Indian tribes may retain a form of sovereignty and self-governance, they are also substantially connected in a variety of governmental spheres with the state in which they are geographically located. That is particularly true with regard to public safety. Tribal officers are often the first responders to investigate offenses that occur on the reservation, even if it is ultimately determined that jurisdiction lies in state or federal court. *See Cohen's Federal Handbook of Indian Law,* § 9.07, p 763 (2005 ed) (so stating).[9] Similarly, and as a practical matter, fresh pursuit

[8] The parties here do not argue that the statutes at issue are preempted or otherwise infringe on the tribe's right to self-govern. We, therefore, assume without deciding that the statutes at issue apply. We note that the complexity of Indian law means that there is no single rule by which to resolve the question of when a particular state law applies to tribal reservations or to tribal members. That determination depends on the type of state law at issue, the existence of related tribal and federal law, and other factors. *White Mountain Apache Tribe v. Bracker,* 448 US 136, 142, 100 S Ct 2578, 65 L Ed 2d 665 (1980).

[9] This case, however, does not involve a jurisdictional question. The parties agree that the charged crimes occurred in Jefferson County and that the circuit

is often necessary to enforce traffic laws, due to the mobility of the violators and the risk they can pose to public safety.[10] Tribal land—which in this case includes part of Highway 26—could become dangerous territory if drivers were allowed to commit a crime or traffic offense on the reservation and then attempt to flee, elude, or resist arrest by tribal officers, knowing that they could not be prosecuted in state court for those acts.[11]

Defendant's arguments and the Court of Appeals decision that tribal police are not "police officers" for purposes of enforcing this state's criminal laws would create a jurisdictional void for offenses by non-Indians against tribal police officers in which a victim's status as a police officer is an element of the crime. *See, e.g.*, ORS 811.535 (failure to obey police officers); ORS 811.540 (fleeing or attempting to elude

court had jurisdiction over defendant. We mention it here to note that determining appropriate jurisdiction for criminal acts committed on an Indian reservation is dependent on a number of factors including whether the crime was committed on the reservation, whether the offender was Indian or non-Indian, the nature of the criminal act, and the applicability of Public Law 280.

[10] Under ORS 133.430, out-of-state officers in fresh pursuit of a fleeing suspect have the same authority to arrest and hold the suspect as any Oregon police officer. Out-of-state officers do not lose their status as police officers, or peace officers, when crossing jurisdictional boundaries. ORS 133.430 provides:

"Any member of a duly organized state, county or municipal peace unit of another state of the United States who enters this state in fresh pursuit, and continues within this state in such fresh pursuit, of a person in order to arrest the person on the ground that the person is believed to have committed a felony in the other state has the same authority to arrest and hold such person in custody as has any member of any duly organized state, county or municipal peace unit of this state to arrest and hold in custody a person on the ground that the person is believed to have committed a felony in this state."

The Warm Springs Tribal Code also includes a fresh pursuit provision, which permits officers to issue a citation at a place beyond their jurisdictional authority when a person commits a traffic offense in the officer's presence and at a place where the officer had jurisdiction, as long as the officer arrests or cites the person at the conclusion of a continuous pursuit. WSTC § 310.120(1).

[11] The United States Supreme Court has affirmed the authority of tribal police to stop and detain non-Indian offenders who violate state law on Indian land. *See Strate v. A-1 Contractors*, 520 US 438, 456 n 11, 117 S Ct 1404, 137 L Ed 2d 661 (1997) ("We do not here question the authority of tribal police to * * * detain and turn over to state officers nonmembers stopped on the highway for conduct violating state law."); *see also Ortiz-Barraza v. United States*, 512 F2d 1176, 1179-80 (9th Cir 1973) (noting that tribal authorities retain sovereign power to exclude nontribal members who violate state or federal law from tribal lands by delivering offenders to proper authorities).

police officers); ORS 807.620, ORS 162.385 (giving false information to a police officer or peace officer); ORS 162.315 (resisting arrest); ORS 162.367 (criminal impersonation of a peace officer). It is highly doubtful that the legislature intended such a result.

To the contrary, the legislature has recognized that tribal police are an integral part of the public safety system in this state and, because they are entrusted by government with the enforcement of Oregon laws, they should be treated as police officers for purposes of training, certification, and discipline. Similarly, given that legislative recognition and because tribal police share a common functional characteristic with the law enforcement officers listed as examples in ORS 801.395, we conclude that the legislature intended to include tribal police officers who are authorized to enforce Oregon law within the statutory definition of "police officer." Because the legislature intended to include a tribal police officer as a "police officer" for purposes of the enforcement of the state traffic and criminal laws at issue in this case, we conclude that a tribal police officer therefore is "designated by law" as a "peace officer" under ORS 161.015(4).

The Court of Appeals erred in concluding that Davino was not a "police officer" or a "peace officer" for purposes of the crimes for which defendant was charged and convicted.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.