Hadlock, J., dissenting.
In my view, the statutory term "any *** other refuse"-as used in ORS 164.805(1) -is *176 broad enough to encompass urine, whether from a human or another animal. I also view the term "deposit"-as used in the same statute-as broad enough to encompass the act of urination. Accordingly, I disagree with the majority's holding that the acts prohibited by ORS 164.805(1) do not include the act of public urination. I respectfully dissent.
As accurately described by the majority, the pertinent facts in this case are few. Defendant urinated on the side of a building, causing a stench. He was cited for violating ORS 164.805(1), which creates the crime of offensive littering. Defendant testified at trial that he had tried without success to obtain permission to use restrooms at two businesses. He urinated against the building because he was panicked and feared that he could not hold his urine any longer. Defendant unsuccessfully argued to the trial court that he was entitled to a judgment of acquittal because urine is not "rubbish, trash, garbage, debris or other refuse" as those terms are used in the offensive-littering statute.
I agree with the majority that, in reviewing the trial court's denial of defendant's motion, our task is one of statutory interpretation. ORS 164.805(1) provides that a person can commit the crime of offensive littering in several ways, including when the person "creates an objectionable stench or degrades the beauty or appearance of property or detracts from the natural cleanliness or safety of property" by intentionally "[d]iscarding or depositing any rubbish, trash, garbage, debris[,] or other refuse" on a public way. The majority begins its analysis by framing the initial question as "whether public urination *** is proscribed by the statute." 294 Or. App. at 23-24. I start at a different place, by attempting to discern, more generally, what conduct the statute prohibits; I then turn to the question of whether *32 public urination is encompassed within the scope of that prohibited conduct.
I begin with the words of the statute, considered in their context. The words "rubbish, trash, garbage, debris[, and] refuse" are not statutorily defined and are not terms of art, so we give them their ordinary meaning. State v. Rankins , 280 Or. App. 673, 678, 382 P.3d 530 (2016). Although the dictionary aids us in that endeavor, id ., we must be mindful that dictionaries "do not tell us what words mean, only what words can mean, depending on their context and the particular manner in which they are used." State v. Cloutier , 351 Or. 68, 96, 261 P.3d 1234 (2011) (emphasis in original). Accordingly, in considering dictionary definitions of the statutory terms, I examine how each possible definition "fits into the context of the statute itself." State v. Gonzalez-Valenzuela , 358 Or 451, 461, 365 P.3d 116 (2015).
Looking to the definitions most relevant in this context, Webster's defines "rubbish" both in a specific way-"useless fragments of stone or other material left over in building or broken from ruined buildings"-and also in a more general way-"miscellaneous useless valueless waste or rejected matter." Webster's Third New Int'l Dictionary 1983 (unabridged ed 2002). "Trash" similarly has a particularized definition-"something in a crumbled or broken condition or mass"-and a more general definition-"something worth relatively little or nothing." Id. at 2432. The same is true of "garbage," which is defined to specifically include "refuse resulting from the preparation, cooking, and dispensing of food" and to include, more generally, "refuse of any kind: WASTE." Id. at 935. "Debris," too, has context-specific definitions-e.g. , "organic waste from dead or damaged tissue"-and one that could be considered more broad-"the remains of something broken down or destroyed." Id. at 582. Finally, Webster's defines the noun "refuse" to include "the worthless or useless part of something" and (as with the definitions of "garbage" and "rubbish") indicates that the term can mean "waste." Id. at 1910. "Waste," in turn, is defined to include unusable or worthless material. Id. at 2580.
*33 In determining which (if any) of those meanings the legislature intended the statutory terms to carry, we must consider the particular context in which the terms are used. Cloutier , 351 Or. at 96, 261 P.3d 1234. The legislature began its description of the materials that the statute covers by using the word "any." That is, the statute prohibits the improper discarding or depositing of "any rubbish, trash, garbage, debris or other refuse."
*177 ORS 164.805(1)(a) (emphasis added). The term "any" is generally recognized to be "broadly inclusive," suggesting that the legislature intended the statutory terms to be given their most general, rather than narrow, meanings. See Oregon State Denturist Ass'n v. Board of Dentistry , 172 Or. App. 693, 702, 19 P.3d 986 (2001) (use of the term "any" in a statutory definition "indicates that that definition is broadly inclusive"); see also Totten v. New York Life Ins. Co. , 298 Or. 765, 771-72, 696 P.2d 1082 (1985) (by using the term "any aircraft," instead of just "aircraft," in an insurance policy, the parties gave the clause "a broad meaning").
Taking into account the statutory terms' broad dictionary definitions, along with the legislature's use of the word "any," I conclude that the common characteristic of all the statutory terms-including the general term "other refuse"-is that they describe, in varying ways and with different emphases, material that lacks value or is "waste." Cf . State v. Kurtz , 350 Or. 65, 74, 249 P.3d 1271 (2011) (describing the principle of ejusdem generis as serving "to confine the interpretation of [a] general [statutory] term according to one or more common characteristic of *** listed examples").[1]
*34 I turn to a consideration of statutory context. Significantly, the legislature has specified that a person's improper discarding or depositing of refuse constitutes offensive littering only if it "creates an objectionable stench or degrades the beauty or appearance of property or detracts from the natural cleanliness or safety of property." ORS 164.805(1) (emphases added). The majority focuses on dictionary definitions that describe items or objects that may constitute "rubbish, trash, garbage, debris or other refuse." 294 Or. App. at 26-30. But the legislature's attention to offensive smells and lack of cleanliness strongly suggest that it was not concerned only with the improper discarding of those kinds of objects. Smells and uncleanliness often are associated with liquid materials, even (or perhaps particularly) those liquids-like urine-that may dry and leave an offensive and unsanitary residue. That context, too, leads me to conclude that the term "refuse" should be construed broadly to include any waste material that is susceptible to being improperly discarded or deposited in a way that causes uncleanliness or an objectionable stench.
That takes me to another part of the statute that I construe differently than the majority does. The conduct that the statute prohibits is the intentional "[d]iscarding or depositing" of certain materials in a way that results in uncleanliness or unsightliness of property, that degrades property's beauty or appearance, or that causes an objectionable stench. ORS 164.805(1). I agree with the majority that the ordinary meaning of "discarding" does not cover the act of urination (although I believe that a person can "discard" urine in other ways, such as by emptying a container in which urine has been collected). However, for the reasons set out below, I do not agree with the majority's suggestion that the term "depositing" may not encompass the act of urination. 294 Or. App. at 25. In my view, it can.
Webster's suggests that the most common use of the word "deposit" is to place "carefully or safely." Webster's at 605. That meaning does not, however, comfortably fit a statute that criminalizes the act of littering. 294 Or. App. at 24-25. Accordingly, I would look instead to dictionary definitions reflecting word usage that may be less common, but that makes more sense in this statutory context.
*178 One such *35 definition is "to set down or place"-but without the emphasis on care and safety. Webster's at 605. Another is "to lay down or let fall or drop by a natural process."[2] Thus, I would construe the word "deposit" to encompass the acts of setting or laying down, placing, or letting fall or drop by a natural process.
Even when it is only a necessary act of excretion, urination involves letting something fall or drop by a natural process. That alone is reason enough to conclude that "depositing" encompasses what happened here. But it is important to acknowledge that a person can intentionally urinate for purposes that are not benignly excretory. A person can decide to urinate in a particular location for reasons that range from being merely inconsiderate (such as urinating publicly when other options are available) to being deliberately offensive or aggressive (such as urinating on the doorstep of an individual or business with whom the person is unhappy). In those kinds of situations, the person has intentionally caused his or her urine to land in a specific desired spot, with a specific desired effect. In my view, the person has "deposited" urine, as that term is used in the offensive-littering statute, because the person has "placed" it where the person wishes it to land.
In sum, I would conclude that the term "other refuse" encompasses urine and that the act of urination can constitute "depositing" that urine within the meaning of the offensive-littering statute. Accordingly, I would hold that the trial court did not err when it denied defendant's motion for judgment of acquittal.[3]
The majority's contrary conclusion raises interesting questions. Significantly, the majority holds that urine *36 can never be "refuse" for purposes of ORS 164.805(1)(a). 294 Or. App. at 30-31 ("Urine *** does not fit with any of the meanings of the terms 'rubbish, trash, garbage, or other refuse' ".). If that is so, a person would not violate the statute by collecting urine and then intentionally discarding or depositing it on a public way, a public transportation facility, or another person's land. The same must be true of solid excrement, as I perceive nothing in the majority opinion that would treat feces differently from urine. Thus, under the majority's analysis, it seems likely that a person does not commit the crime of offensive littering when the person collects feces and later puts it on the sidewalk, in a bus shelter, or on another person's doorstep. More questions inevitably will arise: What about other bodily fluids or solids, such as phlegm or blood, that a person may intentionally transfer directly from the body onto a public way or private property? Is dog feces "refuse" for purposes of this statute?
Of course, our role is not to decide as a policy matter what behavior ought to be criminalized, but to determine the best we can what behavior the legislature has prohibited in a particular criminal statute. The majority has thoughtfully engaged in that task; although I disagree with its ultimate interpretation of the statute for the reasons I have set forth in this dissent, I acknowledge that the question is close. In contemplating what conduct might not be covered by the statute as construed by the majority, I do not mean to convey any opinion about whether that conduct should be criminalized. Rather, I seek only to explain part of the reason that I disagree with the majority's interpretation of the statute. In my view, the terms the legislature chose to use in ORS 164.805(1)(a) reveal its intention to broadly prohibit people from creating offensively smelly, unsightly, unsanitary, or unsafe situations by improperly ridding themselves of waste material on a public way or on the land of others. Construing *179 the statutory terms narrowly, so as to exclude public urination, runs counter to that legislative intent.
I respectfully dissent.

I thus disagree with the majority's conclusion that the terms reflect "the part of something or matter or materials rejected as useless." 294 Or. App. at 29-30. By determining that improperly discarded or deposited material can be "refuse" only if it once was part of something that had value or if it was consciously rejected as valueless, the majority gives the statute an overly narrow reading that is, in my view, inconsistent with the most natural understanding of the statutory terms.
In any event, I am uncertain why urine would not fit even within the majority's conception of matter "rejected as useless." A person at least theoretically has choices about what to do with his or her own urine, including providing it to a medical professional or scientist for testing or another use. In that narrow circumstance, the urine has a kind of value. By urinating against a wall, instead of collecting the urine for a purpose, defendant demonstrated his own rejection of the urine as useless (as he would have had he urinated into a toilet or urinal).

As the majority points out, Webster's gives examples of what it means by "let fall or drop by a natural process" that describe "the accretion or accumulation of as a natural deposit." Webster's at 605. I acknowledge that those examples do not align with the act of urination. However, given that none of the dictionary definitions of "deposit" fit easily into the offensive-littering statute, I do not view the "let fall or drop" definition as any less apt than the others.

Because I would reject defendant's challenge to the denial of his motion for judgment of acquittal, I would-unlike the majority-need to address his two other assignments of error. I would reject the second assignment of error as unpreserved and not presenting an appropriate circumstance to correct any plain error (without deciding whether the court plainly erred in the way that defendant suggests) and would reject the third assignment of error without discussion.