Submitted March 23, affirmed May 11, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

STEVE EUGENE MILLER,
*Defendant-Appellant.*

Washington County Circuit Court
D091782M; A142748

256 P3d 171

George W. Kelly filed the brief for appellant.

John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Stacey RJ Guise, Senior Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Edmonds, Senior Judge.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals from his conviction for private indecency, ORS 163.467. Defendant exposed himself to the victim, who was in custody and awaiting trial as she sat in the hallway of the Washington County "Old Jail" facility. Defendant argues that the trial court erred in denying his motion for a judgment of acquittal because the victim had not been in a place where she had a "reasonable expectation of privacy" within the meaning of ORS 163.467. We affirm.

Defendant was convicted after a trial to the court. Accordingly, we state the facts in the light most favorable to the state to determine whether a rational trier of fact, drawing all reasonable inferences, could have found the elements of the crime proved beyond a reasonable doubt. *State v. Cunningham*, 320 Or 47, 63, 880 P2d 431 (1994). Defendant was being held in a holding cell in the Old Jail facility in Washington County. The Old Jail is so named because it was once the county jail, but is now primarily used as a holding facility for inmates being held while awaiting court proceedings or before being transported to the county jail. The facility primarily consists of a long hallway with doors leading to a number of holding cells and offices for court staff and county corrections officers. Along the walls of the hallway are rows of chairs that are used by people being temporarily held in the facility. Three of those chairs are reserved for female inmates; male inmates are generally lodged in the adjacent holding cells. In addition, individuals participating in the county's "work in lieu of jail" program receive their assignments at one of the offices located off the hallway. The hallway is not open to the public, but it is open to judges, court staff, maintenance personnel, and, on occasion, tour groups escorted by county corrections personnel.

Defendant was lodged in a holding cell located off the hallway of the facility. The cell had a barred window that allowed passersby to observe individuals inside the cell from roughly the waist up. The victim, who was awaiting a court proceeding in an unrelated criminal case, was seated in a chair across from the holding cell. From that chair she could see through the barred window into the cell and could

observe defendant. The victim testified that she observed defendant

> "standing, like, pretty much in front of the bars, and he was touching himself. And then I reacted. And I think it was like—because I slightly looked and sat up, I looked toward the deputy's office, or where they sit at the desk, to my left. And [defendant] stopped and he started pacing around the cell.
>
> "And then he waited, like, maybe two, three minutes and then he went to the far end wall, where I could see him. And he was just leaning up against the wall, like, you know, with his head back. And he pulled out his—his penis and was playing with it, and looking at me.
>
> "And I kind of noticed from the side of my eye and I looked, and then I didn't react this time. I just kind of looked away and kept talking to the girl next to me. And then I got up real quick after he was just kept—continued doing it, and I got up and I told Officer Pope."

The victim testified that it appeared to her that defendant was masturbating. Pope, a county sheriff's deputy assigned to the Old Jail, testified that, after the victim reported defendant's conduct, he went to the holding cell and told defendant to "knock that off." Defendant had his back turned to Pope, and he did not say anything in reply. Pope moved the victim to a bench away from the holding cell and arranged for defendant to be immediately transported to the county jail. Later, defendant was interviewed by police detectives and told them that "he receives sexual gratification from exposing himself."

Defendant was charged with a single count of private indecency under ORS 163.467. That statute provides:

> "(1)  A person commits the crime of private indecency if the person exposes the genitals of the person with the intent of arousing the sexual desire of the person or another person and:
>
> "(a)  The person is in a place where another person has a reasonable expectation of privacy;
>
> "(b)  The person is in view of the other person;
>
> "(c)  The exposure reasonably would be expected to alarm or annoy the other person; and

"(d)   The person knows that the other person did not consent to the exposure.

"(2)   Private indecency is a Class A misdemeanor.

"(3)   Subsection (1) of this section does not apply to a person who commits the act described in subsection (1) of this section if the person cohabits with and is involved in a sexually intimate relationship with the other person.

"(4)   For purposes of this section, 'place where another person has a reasonable expectation of privacy' includes, but is not limited to, residences, yards of residences, working areas and offices."

After the state rested at trial, defendant moved for a judgment of acquittal. Defendant argued that the legislature's use of the term "reasonable expectation of privacy" in ORS 163.467 imported the constitutional standards applicable to claims under Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. Defendant argued that, because neither constitution affords incarcerated persons a "right to privacy," the victim had not been in a place where she had a reasonable expectation of privacy. The trial court denied the motion, explaining:

"Well, it's actually a very creative argument. I—I do feel if we can refer to the Old Jail—if we can refer to the location of the incident as the Old Jail * * *. [I]t's still used as a jail facility. It connect—it actually connects right up to the second floor, and that's where we bring inmates to and from the Old Courthouse. And—and of course, as testified, that's where we hold inmates to bring them over to trial. And we also do other things like work in lieu of jail there, and booking, and things like. But it's definitely a jail facility.

"* * * * *

"Now the question is, what is a place that a person has a reasonable expectation of privacy? And it's defined by statute for us. So, under ORS 163.467 the Legislature defined what that is, and they didn't limit to it, limit it to that, but they tried to—tried to give us an idea of what areas they were talking about.

"And you sort of have to take a—you kind of have to wonder, well, if a place is not open to the general public, then it must be a place where a person has a reasonable expectation of privacy. And it would be hard to think of a place where—if it's not public, why would it not be private?

"And it's an interesting fact pattern that we now find ourselves in a situation where we have a jail facility, and the argument is, is that that's not a place that a person has a reasonable expectation of privacy.

"As far as this particular location goes, I do believe it is a place where a person has a reasonable expectation of privacy because it is a lot like, or very similar to, or is—it's a working area. It's a * * * there's an office there. It fits the definition."

Defendant was convicted by the court. This appeal followed.

In ORS 163.467(4), the legislature defined "place where another person has a reasonable expectation of privacy" for purposes of ORS 163.467. Again, that subsection provides:

"For purposes of this section, 'place where another person has a reasonable expectation of privacy' includes, but is not limited to, residences, yards of residences, working areas and offices."

Defendant does not assert that, if the statute provides inmates with a right of privacy that the constitutions do not, the statute is unconstitutional. Thus, whether defendant exposed himself to the victim in a place where she had "a reasonable expectation of privacy" is a question of statutory interpretation, not constitutional construction. To discern the legislature's intent, we consider the statutory text, context, and any relevant legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

In this case, the state argues that the victim was in a "working area," which is a specifically protected area under ORS 163.467(4). Defendant disagrees. The legislature has not defined "working area," so we give the term its plain meaning. The dictionary definition of "area" includes, as pertinent here:

> "**4 a:** a clear or open space within a building[.] * * * **b :** a definitely bounded part or section of a building set aside for a specific purpose ‹the house has a large kitchen ~ ›[.]"

*Webster's Third New Int'l Dictionary* 115 (unabridged ed 2002) (boldface in original). The dictionary definitions of "working," when used as an adjective, include: "adequate to permit work to be done[.]" *Id.* at 2635. The pertinent definition of "work" provides:

> "**1 :** activity in which one exerts strength or faculties to do or perform * * * **b :** the labor, task, or duty that affords one his accustomed means of livelihood."

*Id.* at 2634 (boldface in original). Thus, as applicable in this case, "working area" means a clear or open space within a building, or a definitely bounded part or section of a building set aside for a specific purpose, that is adequate to permit a person to engage in activity in which the person exerts strength or faculties to accomplish the activity, or to engage in the labor, task, or duty that affords the person their livelihood.[1]

Applying that definition to the evidence in the record in this case, the factfinder could have found that the hallway of the Old Jail facility is a "working area" and thus a "place where another person has a reasonable expectation of privacy." Although not open to the public, the hallway is used by county corrections officers in the course of their duties and is open to court staff, judges, and maintenance personnel, as well as inmates in custody and individuals participating in the county work in lieu of jail program. The evidence showed that the hallway is both a "clear and open space within a building," as well as a "bounded part or section of a building"

---

[1] We have examined the legislative history offered by the parties and have conducted our own review and have found nothing that bears on the question of what constitutes a "place where another person has a reasonable expectation of privacy." The legislative history indicates that the legislature intended ORS 163.467 to fill a "loophole or a void" in the law where acts that would otherwise be punishable under the public indecency statute, ORS 163.465, could not be punished because they did not take place in or in view of a public place. By adding a provision for private indecency, such conduct would be criminalized. *See* Audio Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 2612, May 12, 1999, at 0:02.56 (statement of Rep Floyd Prozanski) http://www.leg.state.or.us/listn/archive/archive.1999s/SJUD-199905121500.ram (accessed May 4, 2011).

that is set aside for use by various persons for "work." Accordingly, the trial court properly denied defendant's motion for a judgment of acquittal.[2]

Affirmed.

---

[2] As noted, defendant's sole argument is that the hallway of the Old Jail is not a place where the victim had a reasonable expectation of privacy. ORS 163.467(1)(a) provides that a person commits the charged offense if "[t]he person is in a place where another person has a reasonable expectation of privacy."