352                      April 27, 2017                      No. 21

IN THE SUPREME COURT OF THE
STATE OF OREGON

DANIEL N. GORDON,
an Oregon professional corporation; and
Daniel N. Gordon, individually,
*Petitioners on Review,*

*v.*

Ellen ROSENBLUM,
Attorney General;
and Oregon Department of Justice,
*Respondents on Review.*

(CC 161208399; CA A154184; SC S063978)

On review from the Court of Appeals.*

Argued and submitted November 10, 2016.

R. Daniel Lindahl, Bullivant Houser Bailey PC, Portland, argued the cause and filed the brief for petitioners on review. Daniel N. Gordon, Gordon Aylworth & Tami PC, Eugene, also argued the cause on behalf of himself.

Michael A. Casper, Assistant Attorney General, Salem, argued the cause and filed the brief for respondents on review. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Jonathan P. Strauhull, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association. Also on the brief was Phil Goldsmith, Portland.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Brewer, and Nakamoto, Justices, and Baldwin, Senior Justice, Justice pro tempore.**

_____

   * Appeal from Lane County Circuit Court, Karsten H. Rasmussen, Judge. 276 Or App 797, 370 P3d 850 (2016).

   ** Flynn, J., did not participate in the consideration or decision of this case.

BALMER, C. J.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.

**BALMER, C. J.**

In this declaratory judgment action, we consider whether provisions of Oregon's Unlawful Trade Practices Act (UTPA) that prohibit using "unconscionable tactic[s]" to collect certain debts, ORS 646.607(1), and causing likely "confusion" or "misunderstanding" regarding loans and credit, ORS 646.608(1)(b), apply to the debt collection activities of plaintiffs, a lawyer and his law firm. The trial court held that those provisions apply only to certain consumer relationships and that plaintiffs' roles as a lawyer and law firm engaged in debt collection activities, and not as a lender or debt owner, removed their activities from the scope of the UTPA. The court granted plaintiffs' request for an injunction preventing the Oregon Department of Justice from enforcing the UTPA against plaintiffs. The Court of Appeals reversed the circuit court's declarations of law and the injunction, concluding that the UTPA does apply to plaintiffs' debt collection activities. *Daniel N. Gordon, PC v. Rosenblum*, 276 Or App 797, 370 P3d 850 (2016). On review we affirm, although our interpretation of the statutes differs in some respects from that of the Court of Appeals.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Daniel N. Gordon, P.C. and Daniel N. Gordon ("law firm" or "plaintiffs") represent creditors and debt buyers in their attempts to collect debt, often defaulted consumer credit card debt. The law firm assists its clients with pre-litigation collection activity, civil litigation, and post-judgment collection efforts. The business is high-volume: In 2010, the law firm pursued collection of more than 16,000 accounts, obtained judgments with respect to approximately 9,000 of those accounts, and collected on approximately 4,000.

In 2011, acting on several years of complaints about the practices of the law firm, the Oregon Department of Justice ("DOJ" or "defendant") investigated the law firm. The investigation revealed a number of practices that DOJ determined might violate the UTPA. For example, in every collection complaint examined by DOJ, the law firm alleged a right to attorneys' fees and interest on the debt, despite in many cases not attaching a contract showing those rights.

Additionally, DOJ found evidence that the law firm failed to follow choice of law provisions in applicable contracts and, as a result, sometimes pursued debts that were barred by the relevant statute of limitations. In the many cases resolved by default judgment, the veracity of the contents of the complaint—and the debtor's obligation to pay—was never established in an adversarial process. As a result of those and other findings, DOJ concluded that the law firm

> "had a pattern and practice of filing thousands of breach of contract actions against credit card debtors and obtaining default judgments for attorneys' fees and interest in a manner that apparently took advantage of the debtors' legal ignorance, lack of resources and general belief that they could not fight the claim."

DOJ determined that it had probable cause to sue to enjoin the law firm and its attorneys from engaging in trade practices prohibited under sections ORS 646.607(1) and ORS 646.608(1)(b) of the UTPA.

Based on that conclusion, DOJ served the law firm with a proposed Assurance of Voluntary Compliance (AVC) and demanded that the law firm execute the agreement. Under the AVC, the law firm would change its behavior as specified in the agreement and DOJ would release the law firm from any liability under the UTPA. The remedies contained in the AVC addressed both the law firm's non-litigation collection activities, such as its use of autodialers, and its litigation activities. The AVC required that any complaint in a breach of contract case involving credit card debt filed by the law firm in Oregon include certain documents, such as a copy of the contract between the creditor and debtor in effect at the time of the creditor's charge-off, and certain information, such as the date of the last payment. It also prohibited the law firm from seeking attorneys' fees as part of any default judgment and required the law firm to use independent contractors, rather than its own employees, to provide service of process.

Plaintiffs refused to execute the agreement and instead initiated this declaratory judgment action. Plaintiffs' complaint contended that the UTPA and the Unlawful Debt Collection Practices Act (UDCPA), ORS 646.639, did not

apply to their actions while representing clients in debt collection activities and sought an injunction preventing DOJ from enforcing those statutes against plaintiffs. On cross motions for summary judgment, the trial court entered judgment for plaintiffs and issued an injunction.[1]

DOJ appealed. The Court of Appeals affirmed the trial court's holding that the UDCPA did not apply to plaintiffs' debt collection activities. *Daniel N. Gordon, PC*, 276 Or App at 814-22. Neither party challenges that holding before this court, and we do not address it. The Court of Appeals, however, reversed the trial court's decision that the UTPA did not apply to plaintiffs' debt collection activities. In analyzing the UTPA, the court first construed ORS 646.607(1), which prohibits a person, in the course of the person's business, from employing "any unconscionable tactic in connection with * * * collecting or enforcing an obligation." ORS 646.607(1). The Court of Appeals disagreed with plaintiffs' contention that, because the debtors were never customers of the law firm, the law firm's actions were not "unconscionable tactics" as that term is used in the UTPA. The court concluded that "the statute does not require plaintiffs and a debtor to have a consumer relationship," interpreting the UTPA to encompass plaintiffs' alleged conduct.[2] *Daniel N. Gordon, PC*, 276 Or App at 809.

Next, the court construed ORS 646.608(1), making it unlawful for a "person," in the course of the person's business, to cause "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services." "Real estate, goods or services" includes "loans and extensions of credit." ORS

---

[1] Although the trial court generally agreed with plaintiffs and granted them the relief they sought, the trial court rejected plaintiffs' argument that DOJ's attempts to regulate plaintiffs' practice of law through the proposed AVC interfered with this court's authority to regulate the practice of law and thus violated the separation of powers provisions in the Oregon Constitution. The Court of Appeals declined to consider plaintiffs' appeal of that ruling because plaintiffs did not file a cross-appeal raising the issue. *Daniel N. Gordon, PC*, 276 Or App at 804 n 7. We agree with the Court of Appeals' disposition of that issue and do not discuss it further.

[2] The Court of Appeals used the term "consumer relationship" to refer to a customer's direct transactional relationship with a business. We follow that usage here.

646.605(6)(a). Plaintiffs argued that the statute applied only to confusion or misunderstanding caused by a person regarding *that person's own real estate, goods, or services*, and not real estate, goods, or services that were provided by some other party. As plaintiffs represented creditors and third-party debt buyers and did not provide loans themselves, under that construction the statute would not apply to them. Again, the Court of Appeals disagreed. It explained that "the statute's text does not explicitly require that the unlawful practice in the course of the person's business must be with respect to that person's own real estate, goods, or services." *Daniel N. Gordon, PC*, 276 Or App at 811.

The Court of Appeals thus concluded that the trial court had erred in holding that ORS 646.607(1) and ORS 646.608(1) did not apply to the law firm's conduct. *Id.* at 822. It reversed those parts of the declaratory judgment and the injunction that the trial court had issued. *Id.*

Plaintiffs petitioned for review, and we allowed the petition.

## II.   ANALYSIS

On review, the parties reprise their arguments over whether two provisions of the UTPA should be interpreted to apply to plaintiffs' alleged conduct. We interpret the statutes by examining their text, context, and legislative history. *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009).

A.   *ORS 646.607(1)*

ORS 646.607 provides, in part:

"A person engages in an unlawful trade practice if in the course of the person's business, vocation or occupation the person:

"(1)   Employs any unconscionable tactic in connection with selling, renting or disposing of real estate, goods or services, or collecting or enforcing an obligation."

Plaintiffs argue that the statute does not apply to their debt collection activities because their relationship with the debtors is not a customer relationship—that is, it is not a relationship between plaintiffs as a business and debtors

as direct customers of that business. Plaintiffs base that argument on the meaning of "unconscionable tactics." ORS 646.605(9) provides:

> "'Unconscionable tactics' include, but are not limited to, actions by which a person:
>
> "(a)   Knowingly takes advantage of a customer's physical infirmity, ignorance, illiteracy or inability to understand the language of the agreement;
>
> "(b)   Knowingly permits a customer to enter into a transaction from which the customer will derive no material benefit;
>
> "(c)   Permits a customer to enter into a transaction with knowledge that there is no reasonable probability of payment of the attendant financial obligation in full by the customer when due; or
>
> "(d)   Knowingly takes advantage of a customer who is a disabled veteran, a disabled servicemember or a servicemember in active service, or the spouse of a disabled veteran, disabled servicemember or servicemember in active service."

Plaintiffs construe ORS 646.605(9) by identifying the definitions of the words "unconscionable" and "tactic" in *Webster's Third New Int'l Dictionary*. They then narrow those "ordinary meanings" by applying the interpretive principle of *ejusdem generis*. Observing that the four examples in that subsection have "little in common" except their reference to "a customer," plaintiffs reason that *all* unconscionable tactics must be conduct directed at "a customer." Next, plaintiffs argue that the use of the indefinite article "a" to modify "customer" is ambiguous as to whether the person using the unconscionable tactic must have a customer relationship with the customer, or whether the customer merely must be a customer of "someone, somewhere." Plaintiffs contend that, in light of the statute's consumer protection purpose, it is "more plausible to interpret the statute to mean 'a customer of the person committing the unconscionable tactics.'" As the law firm's alleged conduct involves tactics directed at debtors and litigation adversaries—not its customers—it argues that its conduct falls outside of the meaning of ORS 646.607(1).

The state's construction of the term is more straightforward. Similar to the plaintiffs' proffered construction, it also gives "unconscionable" and "tactics" their ordinary meanings, taken from dictionary definitions, and simply concludes that "the phrase 'any unconscionable tactic' refers broadly to whatever kind of unscrupulous or unreasonable maneuvers a person might employ to achieve some end." The state rejects the more limited construction offered by plaintiffs, arguing first that the statute's reference to "*any* unconscionable tactic," ORS 646.607(1) (emphasis added), and its definition of that term as "not limited to" the examples provided, ORS 646.605(9), show that "the legislature's purpose in providing the examples was not to put a limitation on the kinds of conduct that was necessary to be 'unconscionable,' but rather to illustrate some of the conduct that could be sufficient." Second, the state argues that the appearance of the word "customer" in each of the four examples in ORS 646.605(9) reflects the fact that many instances of unconscionable tactics would occur in the context of a business-customer relationship, but that the statute does not require such a relationship. Finally, the state asserts that, even if the plaintiffs' *ejusdem generis* interpretation is correct and a "customer" relationship is required, the indefinite article "a" before "customer" indicates that that requirement can be met here by the debtor's customer relationship with the original creditor.

We find the parties' exclusive focus on the meaning of the term "unconscionable tactics" in ORS 646.607(1) to be too narrow. Plaintiffs contend generally that their conduct is not subject to the statute because of the nature of the relationship between the law firm and the debtors. That issue—whether the statute applies only to conduct between persons in a customer relationship—relates to the scope of the UTPA and requires interpreting the statute as a whole, rather than only a part of it. We do agree, however, that the term "unconscionable tactics" is critical to the resolution of the parties' dispute, and determining its meaning in the context of the UTPA is an appropriate place to begin our analysis. We then consider the meaning of the other words in the statute and address plaintiffs' use of the interpretive

principle *ejusdem generis*. Finally, we apply our understanding of the statute to the facts of this case.

The statutory analysis in *State v. Kurtz*, 350 Or 65, 249 P3d 1271 (2011), is instructive in our effort to interpret "unconscionable tactics" as that term is used in ORS 646.605(9). In *Kurtz*, the defendant sought to establish that a Warm Springs Tribal Police Officer was not a "police officer" as that term is used in a criminal statute. *Id.* at 67. For the purposes of that statute, "police officer" was defined in ORS 801.395, which at the time provided that "'Police officer' includes a member of the Oregon State Police, a sheriff, a deputy sheriff, [listing other officials but not tribal officers]." *Id.* at 70-71. The court noted that "statutory terms such as 'including' and 'including but not limited to,' when they precede a list of statutory examples, convey an intent that an accompanying list of examples be read in a nonexclusive sense." *Id.* at 75. The court therefore described ORS 801.395 as providing a "nonexclusive list of examples" but "not expressly defin[ing]" the term "police officer." *Id.* at 74. As the examples did not include "tribal police officer," the court analyzed whether "tribal police officer" was included within the "ordinary meaning" of "police officer." *Id.* at 71-72. After determining that the ordinary meaning of "police officer" did include a tribal police officer, the court looked "to the interpretive influence of the nonexclusive list of examples" in the statute and considered whether the rule of *ejusdem generis* should apply to otherwise limit the meaning of "police officer." *Id.* at 74.

Our analysis here follows a similar path. ORS 646.605(9) gives examples of conduct that constitute "unconscionable tactics," but that subsection does not actually define the term. The statutory term "include, but are not limited to" indicates that the examples of unconscionable tactics are nonexclusive. *See* 350 Or at 75. None of the examples in the statute refer to or describe debt collection activities. Therefore, as in *Kurtz*, we must determine whether plaintiffs' conduct fits within the general term "unconscionable tactics." To do so, we follow our normal analytical method for interpreting statutory text, then consider the interpretive influence of the four examples set out in the statute.

    To determine the meaning of words that are not otherwise defined in a statute, we look first to their "plain, natural, and ordinary" meaning. *DCBS v. Muliro*, 359 Or 736, 745-46, 380 P3d 270 (2016) (internal quotation marks omitted); *Kurtz*, 350 Or at 72. Words that are legal terms of art are exceptions to that rule; we give those words their established legal meaning, often beginning our analysis with *Black's Law Dictionary. Muliro*, 359 Or at 746; *State v. Dickerson*, 356 Or 822, 829, 345 P3d 447 (2015) (interpreting statutes by giving "legal terms * * * their established legal meanings"). In consulting external sources, we are mindful that sources contemporaneous with the enactment of the statute are generally better evidence of the legislature's intended meaning than anachronistic sources.[3] *See Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296 n 7, 337 P3d 768 (2014) ("In consulting dictionaries, however, it is important to use sources contemporaneous with the enactment of the statute.").

    We begin with the nonlegal word: "tactics." We understand "tactics" to mean actions taken as means towards an end. *See Webster's Third Int'l Dictionary* 2327 (unabridged ed 2002) (defining "tactic" as "a device or expedient for accomplishing an end"). In the context of the UTPA, however, the word has little substantive content independent of the word "unconscionable." "Unconscionable," in contrast, is a legal term of art requiring a more extensive analysis. Both legal and lay dictionaries define "unconscionable" similarly: circumstances that are "unfair," "unjust," or "shocking to the conscience." *Black's* at 1694 (4th ed 1968); *Webster's* at 2486. Those familiar definitions, however, are incomplete portrayals of the meaning of the term.

    A look at the common-law doctrine of unconscionability is more useful. Broadly described, unconscionability is an equitable doctrine that allows courts to avoid enforcing or creating circumstances that are unfair, unjust, or

---

[3] The legislature adopted ORS 646.607 and ORS 646.605(9)(a) to (c) in 1977. Or Laws 1977, ch 195, § 1. ORS 646.605(9)(d) was adopted in 2009. Or Laws 2009, ch 215, §§ 1, 2. We thus focus our analysis on sources that indicate what the legislature understood by "unconscionable" in 1977. *See Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995) ("The proper inquiry focuses on what the legislature intended at the time of enactment and discounts later events.").

shocking to the conscience, such as when one person exploits a more favorable bargaining position to take advantage of another. Although today the doctrine appears most often in contract law, historically the doctrine has been applied in many areas of law where courts sought to avoid what they perceived as unfair outcomes. *See generally* Anne Fleming, *The Rise and Fall of Unconscionability as the "Law of the Poor,"* 102 Geo L J 1383 (2014).

This court has followed that pattern and has applied the doctrine in a variety of contexts. For example, we have held that a court may provide a remedy when a person "takes unconscionable and inequitable advantage" of another by appropriating information learned through a contractual relationship. *Kamin v. Kuhnau*, 232 Or 139, 155, 374 P2d 912 (1962) (internal quotation marks omitted). In probate proceedings, a court may consider as void dispositions in a will that result from a person taking "unconscionable advantage" of the testator. *Moran v. Bank of Calif., N.A.*, 206 Or 358, 371, 292 P2d 504 (1956). When sitting in equity, a court may deny relief to a party whose unconscionable conduct constitutes "unclean hands." *Taylor et ux v. Grant et al*, 204 Or 10, 26, 279 P2d 479, *clarified*, 204 Or 35, 279 P2d 1037, *reh'g den*, 204 Or 36, 281 P2d 704 (1955) (internal quotation marks omitted). In property disputes, "any form of unconscionable conduct, artifice, concealment, or questionable means" may justify imposing a constructive trust. *Marston v. Myers et ux*, 217 Or 498, 509, 342 P2d 1111 (1959) (internal quotation marks omitted). And when construing statutes, a court may seek to avoid "unconscionable results." *Parr v. Dept. of Revenue*, 276 Or 113, 116, 553 P2d 1051 (1976) (internal quotation marks omitted).

Those varied applications of the doctrine of unconscionability are less familiar than the iteration most common today: unconscionability in the formation or substantive terms of a contract (known respectively as "procedural" and "substantive" unconscionability) raised as a defense in a contract enforcement action. *See, e.g.*, *Bagley v. Mt. Bachelor, Inc.*, 356 Or 543, 554, 340 P3d 27 (2014) (discussing court's authority to refuse to enforce unconscionable contracts). That formulation rose in prominence when it was codified in Uniform Commercial Code section 2-302 and widely

adopted by states during the 1960s. Fleming, 102 Geo L J at 1422 n 249 (noting that by 1967 every state except Louisiana had adopted the UCC); *see* Or Laws 1961, ch 726, § 72.3020 (adopting section 2-302). Later uniform laws regulating other fields of activity included unconscionability provisions similar to section 2-302. Howard J. Alperin & Roland F. Chase, *Consumer Law: Sales Practices and Credit Regulation* § 174, 249 (1986) (identifying, among others, the Uniform Consumer Credit Code (1968) and the *Restatement (Second) of Contracts* (1981) as including unconscionability provisions as a result of "the widespread acceptance of th[at] U.C.C. concept"). Notably, Congress applied the doctrine of unconscionability expressly to debt collection activities in the 1977 Fair Debt Collection Practices Act. Pub L 95-109, § 808, 91 Stat 874, 879 (codified at 15 USC § 1692f) ("A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."). Around that time, this court observed that "[u]nconscionability is a legal doctrine currently undergoing a rapid evolution." *W. L. May Co. v. Philco-Ford Corp.*, 273 Or 701, 706, 543 P2d 283 (1975). Two years later, the legislature adopted the statutes at issue here.

Unconscionability thus was a doctrine in flux in 1977. It had a long history of broad, if uneven, applicability in the common law, and the contours of the doctrine were never particularly clear, given the diverse circumstances in which it arose. That dynamism complicates an effort to construct a complete explanation of the term's meaning at that time. Fortunately, that is not our task. The questions before us are more limited: Does the doctrine of unconscionability apply only to certain types of relationships, thereby limiting the applicability of the term "unconscionable tactic" in ORS 646.607(1)? If so, does that limitation render the UTPA inapplicable to plaintiffs' collection activities, which were directed at persons with whom plaintiffs had no customer relationship? In light of the common-law history of the doctrine, which shows extensive application, and the statutory history, which shows an expanding meaning at the time the UTPA was enacted, we cannot conclude that the doctrine of unconscionability or the term "unconscionable tactics" had such a limitation. Thus, the meaning of

the term "unconscionable tactics" itself provides no basis for excluding plaintiffs' conduct from the reach of the UTPA.

We turn to the remainder of the text to determine whether the legislature intended that ORS 646.607(1) apply only in the context of certain relationships; specifically, did the legislature intend to exclude the relationship of a lawyer seeking to recover a consumer debt obligation from a debtor on behalf of a client? Relevant to our analysis are, first, the meaning of the statutory examples provided in ORS 646.605(9) and their effect on the general term "unconscionable tactics." Second, we consider the statutory phrases "in connection with * * * collecting or enforcing an obligation" and "in the course of the person's business, vocation or occupation," which further determine the circumstances in which ORS 646.607(1) applies.

As described above, plaintiffs argue that the canon of construction *ejusdem generis* informs the meaning of "unconscionable tactics." We think plaintiffs have improperly applied that canon. *Ejusdem generis* is an interpretive rule requiring "a nonspecific or general phrase that appears at the end of a list of items in a statute * * * to be read as referring only to other items of the same kind" as the items in the list. *Vannatta v. Keisling*, 324 Or 514, 533, 931 P2d 770 (1997).

Again, *Kurtz* is instructive and demonstrates when *ejusdem generis* does not apply. In that case, the Court of Appeals had applied *ejusdem generis* in its interpretation of the statute, which provided in part: "'Police officer' *includes* [listing types of officials]." *Kurtz*, 350 Or at 71, 73-74 (internal quotation marks and citation omitted; emphasis in *Kurtz*). This court disagreed with that approach, explaining that *ejusdem generis* does not apply when the legislature "signal[s] that it does not intend to confine the scope of a general term in a statute according to the characteristics of listed examples" through "statutory terms such as 'including' and 'including but not limited to.'" *Id.* at 75.

In this case, plaintiffs would apply *ejusdem generis* to argue that the references to "a customer" in the examples mean that the general term "unconscionable tactics" requires a customer relationship. We disagree. As in *Kurtz*,

the phrase "include, but are not limited to," ORS 646.605(9), indicates that our interpretation of the term should not rely on *ejusdem generis*.

But even in circumstances where *ejusdem generis* is unwarranted, the maxim *noscitur a sociis* reminds us that "the meaning of words in a statute may be clarified or confirmed by reference to other words in the same sentence or provision." *Goodwin v. Kingsmen Plastering, Inc.*, 359 Or 694, 702, 375 P3d 463 (2016). Thus, the examples in ORS 646.605(9) are relevant to our interpretation of "unconscionable tactics," even outside the formal structure of *ejusdem generis*, and provide context for our understanding of that term. The first three examples of that subsection describe unconscionable tactics in the context of an "agreement" or "transaction." The fourth example does not refer to any sort of exchange between parties, instead describing a person that "takes advantage" of disabled veterans, disabled servicemembers, active servicemembers, and their spouses.[4] The notable absence of a transaction or agreement in that example suggests that a transaction or agreement is not a required element of "unconscionable tactics."

The text of the statute surrounding "unconscionable tactic" also helps interpret that term. Prohibited unconscionable tactics are those that are used "in connection with *** collecting or enforcing an obligation." ORS 646.607(1). Generally, where a person seeks to collect or enforce an obligation, there is an obligor and an obligee. *See Black's* at 1242, 1244 (10th ed 2009) (defining obligation, obligor, and obligee). Those two parties are related by a "duty" of the obligor to "do a certain thing" for the obligee. *Id.* at 1242.[5] But ORS 646.607(1) encompasses relationships beyond that between obligor and obligee: relevant conduct is not limited to the collection or enforcement of an obligation, but may be "in connection with" those actions. In other words, the

---

[4] ORS 646.605(9)(d) was enacted in 2009, 32 years after the first three examples. Or Laws 2009, ch 215, §§ 1, 2. It is still relevant to our analysis "for the purposes of demonstrating consistency (or inconsistency) in word usage over time as indirect evidence" of the legislature's original intent. *Halperin v. Pitts*, 352 Or 482, 490, 287 P3d 1069 (2012).

[5] We express no opinion about the types of duties that may constitute an obligation for the purposes of ORS 646.607(1).

unconscionable tactics need not occur specifically within an obligor/obligee relationship—they come within the statute if they are connected to that relationship.

Here, plaintiffs are neither obligors nor obligees. They do not own the debt or owe the money. The debtors, however, are obligors who owe an obligation to the debt owners—and plaintiffs are a lawyer and law firm that were retained to collect the debt on behalf of the debt owners. In short, there is a "connection" between plaintiffs and the debtors' underlying obligations. With these facts, we have no trouble concluding that plaintiffs' relationship to the debtors and debt owners satisfies the "in connection with" requirement of ORS 646.607(1).

We also note that the UTPA applies to—and is limited to—unconscionable tactics employed "in the course of the person's business, vocation or occupation." ORS 646.607. Here, of course, plaintiffs represent clients in thousands of debt collection matters each year, and do so in the course of their business, so that standard is met.

In sum, the term "unconscionable tactic" in ORS 646.607(1) takes its meaning from the legal doctrine of unconscionability, a doctrine that has been applied to many areas of law where there is no customer relationship of the sort urged by plaintiffs. The examples provided in ORS 646.605(9) likewise do not indicate that a transaction or agreement is required between plaintiffs and the persons from who they seek to collect debts. The phrase "in connection with * * * collecting or enforcing an obligation" shows that the legislature intended ORS 646.607(1) to apply in connection with an obligor/obligee relationship. And, the conduct must occur "in the course of the person's business, vocation or occupation." Plaintiffs' alleged conduct constitutes the use of "unconscionable tactics" under the UTPA.

B.  *ORS 646.608(1)*

Plaintiffs also argue that the other provision of the UTPA that DOJ relies on, ORS 646.608(1)(b), does not apply to their debt collection activities. That statute provides, in part:

"(1)   A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following:

"* * * * *

"(b)   Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of real estate, goods or services."

"Real estate, goods or services" are defined as "those that are or may be obtained primarily for personal, family or household purposes * * * and includes loans and extensions of credit." ORS 646.605(6)(a).

The state, focusing on the statutory text, argues that a violation of ORS 646.608(1)(b) occurs when three elements are present: (1) a "person" (2) "in the course of the person's business, vocation or occupation" (3) "[c]auses likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification" of, among other things, a "loan or extension of credit." The state asserts that plaintiffs' alleged conduct meets those elements and violates the statute.

Plaintiffs' argument again emphasizes their understanding of the UTPA's *purpose*, which they describe as "to regulate the provision of real estate, goods, and services to consumers." That purpose, they argue, constrains the reach of the UTPA such that ORS 646.608(1)(b) only applies to businesses that make "false or misleading representations to consumers about *their own* goods or services." (Emphasis in original.) Plaintiffs, however, do not identify any part of the statutory text that supports that limitation.

We agree with the state that the elements constituting a violation of ORS 646.608(1) are apparent on the face of the statute. No one disputes that plaintiffs are "persons" for the purposes of the UTPA, and we analyze the remaining two elements to determine if plaintiffs' proposed limitation is contained in the text, and more generally, if ORS 646.608(1) applies to plaintiffs' conduct.

Our analysis of the second element, "in the course of the person's business, vocation or occupation," is aided by this

court's decision in *Wolverton v. Stanwood*, 278 Or 341, 563 P2d 1203, *reh'g den*, 278 Or 709, 565 P2d 755 (1977), where we considered the meaning of that phrase. In *Wolverton*, the owner of a car service station sold a car engine to a customer. *Id.* at 343. In the course of the sale, the seller made several representations about the engine that were false. *Id.* The buyer sued for damages under ORS 646.608(1)(g), which at the time prohibited a seller from making certain false representations about goods "in the course of his business, vocation or occupation." 278 Or at 343-44.[6] Before this court, the seller argued that he had not made the sale "in the course of his business, vocation, or occupation," because his business was to service cars, and not to sell engines. *Id.* at 344. This court construed "in the course of his business, vocation or occupation" to mean that the statute applied "to those unlawful practices which arise out of transactions which are at least *indirectly connected* with the ordinary and usual course of defendant's business, vocation or occupation" and held that the defendant's actions met that standard. *Id.* at 345 (emphasis added).

The second element thus requires an "indirect connect[ion]" between the unconscionable tactic and the person's business, vocation, or occupation. But neither the text nor *Wolverton* requires the relationship that plaintiffs posit, *i.e.*, that a person only violates the UTPA if the person causes confusion or misunderstanding about that person's own "real estate, goods or services."

Nor does the text of the third element support the plaintiffs' proposed limitation. The third element requires a causal relationship: a person subject to the statute must have actually caused "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification" of "loans or extensions of credit." That causal requirement is entirely different from plaintiffs' contention that the provision applies only to a person's false or misleading statements about that person's loans or extensions of credit. Here, the allegations indicate that plaintiffs' conduct

---

[6] *Wolverton* analyzed ORS 646.608 (1977), which contained the term "his business" in place of the current version's "the person's business." That textual difference is irrelevant to our analysis.

could have caused debtors to have likely confusion or misunderstanding about, for example, the interest rate applicable to the debt or whether the debtors would have to pay the debt owners' attorneys' fees.

We agree with the state and the Court of Appeals that plaintiffs' alleged conduct comes within a straightforward interpretation of ORS 646.608(1)(b): a person who causes a likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of any real estate, goods, or services (including loans or extension of credit) may be liable under ORS 646.608(1) if that person satisfies the rest of the subsection. In short, the text requires only two relationships. First, the person must "cause[]" the likelihood of confusion or misunderstanding experienced by the other person. ORS 646.608(1)(b). And second, that causal relationship must exist in the context of "the course of the [first] person's business, vocation or occupation," that is, the causal relationship must "arise out of transactions which are at least indirectly connected with the ordinary and usual course of [the person's] business, vocation or occupation." *Wolverton*, 278 Or at 345. Plaintiffs are alleged to have caused likelihood of confusion or misunderstanding and to have done so so in the course of their business, thereby satisfying the requirements of ORS 646.608(1)(b). We therefore conclude that plaintiffs' debt collection activities are subject to ORS 646.607(1) and ORS 646.608(1)(b).

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is affirmed in part and reversed in part, and the case is remanded to the circuit court for further proceedings.