Argued and submitted January 24, affirmed April 19, 2023

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JUSTIN ANDREW WIMMER,
*Defendant-Appellant.*

Deschutes County Circuit Court
18CR75030; A174783

529 P3d 307

Defendant appeals from a judgment of conviction for private indecency, ORS 163.467, for having masturbated in front of his daughter while in a viewing room in an adult sex shop. In his first assignment of error, he challenges the trial court's denial of his motion for judgment of acquittal. In his second assignment of error, defendant argues that the trial court plainly erred when it required defendant to report as a sex offender. *Held*: The Court of Appeals concluded that a rational trier of fact could conclude that the viewing room defendant was in was a place where his daughter had a reasonable expectation of privacy under ORS 163.467. Thus, the trial court did not err in denying defendant's motion for judgment of acquittal. The court rejected defendant's second assignment of error without written discussion because defendant did not challenge the legal basis upon which the trial court imposed a special condition of probation, *see* ORS 137.540(2), and in all events, defendant's assignment of error was neither preserved nor plainly erroneous.

Affirmed.

Wells B. Ashby, Judge.

Francis C. Gieringer, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Leigh A. Salmon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, and Joyce, Judge, and Hellman, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Defendant appeals from a judgment of conviction for private indecency. His conviction stems from an incident in which defendant masturbated in front of his daughter while in a viewing room in an adult sex shop. On appeal, he assigns error to the denial of his motion for judgment of acquittal; in his view, the viewing room was not a place where his daughter had a reasonable expectation of privacy. *See* ORS 163.467(1)(a) (a person commits the crime of private indecency if, among other things, they expose their genitals and are in a place where "another person has a reasonable expectation of privacy"). Because we conclude that a rational trier of fact could conclude that the state had proven the essential elements of the crime, we agree with the state that the trial court correctly denied his motion. Defendant also assigns error to the trial court's requirement that, as a special condition of probation, defendant register as a sex offender. We reject that assignment of error without written discussion because defendant does not challenge the legal basis upon which the trial court imposed a special condition of probation, *see* ORS 137.540(2), and in all events, defendant's claim of error is neither preserved nor plainly erroneous. We therefore affirm.

Determining whether the trial court erred in denying defendant's motion for judgment of acquittal depends, at least initially, on the meaning of the private indecency statute. That issue is one of statutory construction and we review for legal error. *State v. Velasquez*, 286 Or App 400, 404, 400 P3d 1018 (2017). After we "settle the legal issue," we "determine whether a rational trier of fact could have found that the essential elements of the crime had been proved beyond a reasonable doubt." *State v. Bowen*, 280 Or App 514, 516, 380 P3d 1054 (2016) (internal quotation marks omitted). We state the evidence in the light most favorable to the state. *State v. Fuller*, 303 Or App 47, 48, 463 P3d 605 (2020).

Imagine That is an adult bookstore that sells adult movies, magazines, and toys. Except for the office and storage room, the store is open to the public to anyone above the age of 18. The store consists of a DVD rental area, a stage,

and an "arcade," which consists of "primarily rooms that gentlemen go into, shut their door, put money into a machine, and they can watch porn." There are 15 rooms, each of which have doors with push button locks on the doorknobs. The rooms have seats, television screens, and a machine that accepts money in exchange for pornographic movies. Two of the rooms have "glory holes" that allow someone to see from one room into another. It is not uncommon for people to have sex in the rooms.

Defendant has an 18-year-old daughter, J. He bought her alcohol and took her to Imagine That. Defendant went to one of the viewing rooms and, after a period of time, texted J that he could see, through a glory hole, two people having sex. The text "sparked" J's interest, so she went to the viewing room that defendant was using. J looked through the glory hole and saw people "kind of essentially touching them—each other, but not like actually having sex." Defendant then tried to put a bill into the machine to "pay for porn" but the machine did not accept it. He told J to get some change. When she returned, defendant was watching a video. He told her to stay in the room and keep the door closed, because apparently the door lock did not work. J sat with her back against the door to keep it closed. J then saw that defendant was masturbating. Defendant "exposed himself" to J and made a comment about J's boyfriend. J then stood up and left the room.

The state charged defendant with private indecency. ORS 163.467. That statute provides that a person commits the crime of private indecency if they expose the genitals "of the person with the intent of arousing the sexual desire of the person or another person" and:

"(a)   The person is in a place where another person has a reasonable expectation of privacy;

"(b)   The person is in view of the other person;

"(c)   The exposure reasonably would be expected to alarm or annoy the other person; and

"(d)   The person knows that the other person did not consent to the exposure."

ORS 163.467(1). A "place where another person has a reasonable expectation of privacy" "includes, but is not limited to, residences, yards of residences, working areas and offices." ORS 163.467(4).

At the bench trial, J explained that she felt like the viewing room was a private area: "When I was in that room, I felt private." She acknowledged that the presence of the glory hole meant that the people in the room next door could see her as easily as she saw them.

Defendant moved for a judgment of acquittal, arguing that because the viewing room was a public place, the state could not prove that defendant had committed private indecency. He maintained that J had no reasonable expectation of privacy in the viewing room and that a person, as a matter of law, could not have such an expectation "in a location that is intended and designed for this kind of behavior."

The court denied the motion. In doing so, it made several findings. It found that the viewing rooms are for "temporary lease" by the users of the rooms and that the door is locked from the inside "to assure some level of privacy for occupants, should they choose to avail themselves of that level of privacy." Defendant had J "put herself against the door to assure that level of privacy." The court then found that J had "a reasonable expectation of privacy in this room, and that is because they are both in the same room, and the defendant has created that privacy, or at the least the appearance of that privacy for the alleged victim, and she believes his intention." The court ultimately found defendant guilty beyond a reasonable doubt.

Defendant appeals, assigning error to the denial of his motion for judgment of acquittal. He continues to assert that the viewing room could not be a place "where another person has a reasonable expectation of privacy," as ORS 163.467 uses that phrase. In defendant's view, that phrase invokes the familiar Fourth Amendment test, coined by Justice Harlan in *Katz v. United States*, 389 US 347, 361, 88 S Ct 507, 19 L Ed 2d 576 (1967) (Harlan, J., concurring). Under that test, a person holds a reasonable expectation of privacy when they have a subjective expectation that is objectively reasonable. *Id.* at 361. The state, in

contrast, argues that when the Oregon legislature enacted ORS 163.467, it did not incorporate the Fourth Amendment standard and submits instead that the phrase suggests that the legislature was simply trying to cover those places that were not "public."[1]

As framed, the parties' arguments present a question of statutory construction, which we resolve by considering the statute's text, context, and any relevant legislative history. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009). Before explaining what we believe the legislature intended in enacting the statute, we first explain what we believe the legislature did *not* intend, *i.e.*, to incorporate the Fourth Amendment standard of reasonable expectation of privacy. We need look no further than the places specified in the statute to conclude as much. The statute expressly includes "residences, yards of residences, working areas and offices" as places where someone has an expectation of privacy for purposes of the private indecency statute. ORS 163.467(4). Yet it is well established that a person does not have a reasonable expectation of privacy for Fourth Amendment purposes in a yard that is viewable from a lawful vantage point, *see Florida v. Riley*, 488 US 445, 109 S Ct 693, 102 L Ed 2d 835 (1989), and ORS 163.467 does not qualify "yard" as one that must be obstructed from view.

Likewise, we have held that a hallway in a detention facility is a "working area"—and thus a place where a person has a reasonable expectation of privacy as ORS 163.467(4) contemplates that term. *See State v. Miller*, 242 Or App 572, 256 P3d 171 (2011). In *Miller*, the victim was seated across from the defendant, who was in a holding cell.

---

[1] The state also argues that defendant did not preserve his argument that ORS 163.467 incorporates the Fourth Amendment reasonable expectation of privacy standard. We agree that defendant did not expressly frame his argument in Fourth Amendment terms. But we nevertheless conclude that defendant put the meaning of the statute before the court and argued that J had no reasonable expectation of privacy and that, in all events, we have an independent obligation to properly construe the statute. *See Strasser v. State of Oregon*, 368 Or 238, 260, 489 P3d 1025 (2021) (explaining that an appellate court has an independent duty to correctly interpret any statute that comes before it, "regardless of the arguments and interpretations offered by the parties"); *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) (observing that an appellate court is responsible for identifying the correct interpretation of a statute, "whether or not asserted by the parties").

*Id.* at 574. The victim, who was awaiting a proceeding in a criminal case, observed the defendant masturbating in his cell. *Id.* at 575. In addressing the question whether the jail's hallway was a place where "another person ha[d] a reasonable expectation of privacy," we considered whether the hallway was a "working area." *Id.* at 577. We concluded that it was. *Id.* at 578. Two things about that conclusion are notable. First, we did not determine whether a hallway was a "working area" by assessing whether someone would have a reasonable expectation of privacy as that term is used under Fourth Amendment jurisprudence. Second, a hallway in a detention facility is not, under the Fourth Amendment, a place where someone in custody typically has a reasonable expectation of privacy. *E.g.*, *Hudson v. Palmer*, 468 US 517, 527-28, 104 S Ct 3194, 82 L Ed 2d 393 (1984) (observing that a right of privacy "in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance" of the correctional facility environment).

That leaves the question of what the legislature *did* intend. To recap, a "'place where another person has a reasonable expectation of privacy' includes, but is not limited to, residences, yards of residences, working areas and offices." ORS 163.467(4). The parties agree that the viewing room is not one of the specific places listed in the statute; the dispute thus centers on whether the viewing room falls within the broader category of a "place where another person has a reasonable expectation of privacy." That is not to say, however, that the four places specified in the statute are irrelevant. To the contrary, when statutes use terms such as "including" and "including but not limited to," when they precede a list of examples, it "convey[s] an intent that an accompanying list of examples be read in a nonexclusive sense." *State v. Kurtz*, 350 Or 65, 75, 249 P3d 1271 (2011). The specific examples used "provide context for our understanding of" the term or phrase at issue. *Daniel N. Gordon, PC v. Rosenblum*, 361 Or 352, 365, 393 P3d 1122 (2017). Stated slightly differently, and somewhat anachronistically, we rely on the maxim *noscitur a sociis*, which "reminds us that 'the meaning of words in a statute may be clarified or confirmed by reference to other words in the same sentence or provision.'" *Id.*; *see also White v. State Ind. Acc. Com.*, 227 Or 306,

317, 362 P2d 302 (1961) (under the doctrine of *noscitur a sociis*, "general words, found in a statute, may take the color and meaning of associated words of specific connotation").[2]

We thus start with the four listed places: residences, yards of residences, working areas, and offices, and the extent to which those provide context for understanding "a place where another person has a reasonable expectation of privacy." We begin by observing that each of those non-exclusive examples suggests that they are places not open to the public. *Cf. Miller*, 242 Or App at 578 (hallway in correctional facility was "not open to the public"). A residence, for example, is not open to the public—and that remains true even if there is someone else in the residence. The same holds true for a yard, an office, and a work area: Each is a place where a person has a reasonable expectation of privacy, insofar as such areas are not accessible to the general public. The nonexclusive examples provided by the legislature in ORS 163.467(4) thus support an understanding that "a place where another person has a reasonable expectation of privacy" means a place that is not accessible to the public, essentially mirroring the definition of "public place" in the public-indecency statute. *See* ORS 161.015(10) (defining a "public place" for purposes of the public-indecency law as "a place to which the general public has access" and providing examples). Conversely, nothing in the statute suggests that a person must be *alone* to have a reasonable expectation of privacy in, for example, a residence, yard, working area, or office. That is, one need not be alone in a private space to have a reasonable expectation of privacy in that space in the sense that phrase is used in ORS 163.467(4).

That observation is consistent with the statute's legislative history. As we noted in *Miller*, the legislative history reflects that the legislature intended the statute to fill a "loophole or a void" in the law where "acts that would

---

[2] That maxim should not be confused with—although often understandably is—*ejusdem generis*, which requires a nonspecific or general phrase "that appears at the end of a list of items in a statute *** to be read as referring only to other items of the same kind" as the items in the list. *Gordan*, 361 Or at 364. More directly, *ejusdem generis* applies *only* when a nonspecific or general term appears at the end of the statutory phrase and not, as it is here, at the beginning. *Id.*; *see also* Jack Landau, *Oregon Statutory Construction*, 97 Or L Rev 583, 687-89 (2019) (explaining distinction).

otherwise be punishable under the public indecency statute, ORS 163.465,[3] could not be punished because they did not take place in or in view of a public place." 242 Or App at 578 n 1 (internal quotation marks omitted). One example involved a person who entered the victim's apartment and exposed himself. Because the exposure was not in public, the person could not have been prosecuted for public indecency.

Similarly, referencing an incident that occurred in a college dorm room that could not be prosecuted as public indecency, bill cosponsor Representative Floyd Prozanski explained that the law was intended to "mirror" the public indecency statute. Tape Recording, Senate Committee on Judiciary, Public Hearing, HB 2612, May 12, 1999, Tape 176, Side A; *see also* Staff Measure Summary, Joint Conference Committee, HB 2612B, June 21, 1999; Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, HB 2612, Apr 16, 1999, Tape 142, Side A (statement of Legislative Counsel John Horton) (explaining that current public indecency statute did not cover situations where the inappropriate exposure occurs in a place that is not technically in public); Staff Measure Summary, House Committee on Judiciary, Subcommittee on Criminal Law, HB 2612A, Apr 18, 1999 (explaining that existing public indecency statute covered exposures that occur "in public," but there was an "[a]bsence in current law of any provision to address a situation where a person exposes themselves in private").

The public indecency statute and the private indecency statute were thus intended to work together to cover a broad range of inappropriate exposures. While the public indecency statute covers exposures that occur in or in view of public places—a "place to which the general public has access," *see* ORS 161.015(10)—the private indecency statute was intended to cover situations where the exposure occurs in a place that a person reasonably expects is not public.

---

[3] A person commits public indecency when they are "in, or in view of, a public place" and the person performs a sexual act. ORS 163.465. "Public place" means "a place to which the general public has access and includes, but is not limited to, hallways, lobbies and other parts of apartment houses and hotels not constituting rooms or apartments designed for actual residence, and highways, streets, schools, places of amusement, parks, playgrounds and premises used in connection with public passenger transportation." ORS 161.015(10).

We thus construe a "place where a person has a reasonable expectation of privacy" to encompass those places where a person has a reasonable expectation of privacy *vis-à-vis* the public not having access to the area.[4] *See also Miller*, 242 Or App at 578 (hallway in correctional facility was "not open to the public" although it was otherwise open to court staff, judges, and other personnel).

Having construed ORS 163.467, we now turn to the second issue in this case, *viz.*, whether "a rational trier of fact could have found that the essential elements" of the private indecency statute "had been proved beyond a reasonable doubt." *Bowen*, 280 Or App at 516 (internal quotation marks omitted). Given the evidence in this case, we conclude that the trial court correctly denied defendant's motion for judgment of acquittal. The evidence shows that because the viewing room that defendant was in had a broken or inoperable lock, defendant asked J to put herself against the door. A rational trier of fact could conclude that he did so to ensure a particular level of privacy in the room. Having barricaded the door with her body, a rational trier of fact could find that J had a reasonable expectation of privacy in the room, *i.e.*, that she made the room inaccessible to the public by using her body in place of the door lock. The fact that there was a small hole through which a person in the adjoining private room could see into the private room occupied by defendant and J does not, as defendant contends, preclude a rational trier of fact from finding that J was in a place where she had a reasonable expectation of privacy. The room remained a private space, rather than a public one, because it was not accessible to the general public, even if it was also not completely secluded. Because a rational trier of fact could conclude that J had a reasonable expectation of privacy, the trial court properly denied defendant's motion for judgment of acquittal.

Affirmed.

---

[4] Defendant suggests that to construe the element in this way would lead to "absurd results." By way of example, he suggests that a person in a locker room could be accused of private indecency when they got unclothed. But in that circumstance, it is unlikely that "the exposure reasonably would be expected to alarm or annoy the other person," as ORS 163.467(1)(c) requires. A person's alarm or annoyance in such an instance would not be reasonable, given that it is customary for one to be in various states of undress in a locker room.